# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

# CHARLOTTE DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>NORTH CAROLINA; THE NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her capacity as the Executive Director of the North Carolina State Board of Elections; THE MECKLENBURG COUNTY BOARD OF ELECTIONS; MICHAEL G. DICKERSON, in his official capacity as the Director of Elections for Mecklenburg County; CAROL HILL WILLIAMS, in her capacity as the Chair of the Mecklenburg County Board of Elections; THE GUILFORD COUNTY BOARD OF ELECTIONS; CHARLIE COLLICUTT, in his official capacity as Director of Elections for Guilford County; and HORACE KIMEL, JR., in his capacity as Chair of the Guilford County Board of Elections,<br>        Defendants, and<br><br>THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA AND THE NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE,<br><br>  Proposed Defendant-Intervenors. | Civil Action No. 3:20-cv-211 |

**MEMORANDUM IN SUPPORT OF THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA AND THE NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE's MOTION TO INTERVENE AS DEFENDANTS**

Proposed Defendant-Intervenors the League of Women Voters of North Carolina and the North Carolina A. Philip Randolph Institute ("Defendant-Intervenors") seek to protect their interests and to ensure that no voter in North Carolina has his or her registration improperly or illegally canceled as a result of the Plaintiff's demand for a court-ordered program to remove voter registrants from the voter rolls of North Carolina, including those of Mecklenburg and Guilford Counties, on the basis of flawed and inflated data analysis roundly rejected by other courts. No such court-ordered action is appropriate under—much less required by—the National Voter Registration Act of 1993 ("NVRA"), a federal statute designed to make it *easier* for voters to become and remain registered to vote. Furthermore, such unnecessary measures during the current COVID-19 pandemic would divert crucial resources that are otherwise needed to ensure safe and accessible elections. Finally, and for the reasons stated below and as reflected in the Proposed Answer exhibited hereto as Exhibit 1, Count I of the Complaint should be rejected for failure to state a claim pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. As the Defendant-Intervenors' interests present common questions of law and fact as those presented in the main action, and because intervention will not unduly delay or prejudice the rights of the existing parties, Defendant-Intervenors respectfully move to intervene in this matter.

## ARGUMENT

**I. Defendant-Intervenors have a Vital Interest in Protecting the Ability of North Carolina Voters to Register and Stay Registered to Vote.**

Defendant-Intervenors conduct extensive voter registration work in North Carolina, including specifically Mecklenburg and Guilford Counties, and are dedicated to ensuring that qualified voters are able to register and, so long as they remain eligible, remain registered and able to meaningfully participate in the political process. Declaration of Jo Nicholas ("Nicholas Decl.") ¶¶ 3-6 (attached hereto as Exhibit 2); Declaration of Melvin Montford ("Montford Decl.") ¶¶ 4-6

(attached hereto as Exhibit 3). Each Defendant-Intervenor has devoted significant time and resources to making sure qualified North Carolina voters are registered to vote and remain registered. The League of Women Voters of North Carolina conducts voter registration drives in a variety of settings through its 17 local chapters, which are located throughout North Carolina including a Piedmont Triad local chapter operating in Guilford County and a Charlotte-Mecklenburg local league. Nicholas Decl. ¶¶ 5-6. In the 2016 election cycle, the League of Women Voters of North Carolina assisted "several thousands of voters to register and hundreds of voters to enroll to receive absentee or by-mail ballots," and expects to engage in similar efforts for the upcoming general election cycle. Nicholas Decl. ¶¶ 6-7. The North Carolina A. Philip Randolph Institute also undertakes canvassing and various voter registration programs through its thirteen local chapters across the state, including Guilford and Mecklenburg Counties. Montford Decl. ¶¶ 6-7.

Efforts to purge allegedly ineligible voters from voter rolls of North Carolina, and specifically Mecklenburg and Guilford Counties, will undermine the voter registration efforts Defendant-Intervenors have and will continue to undertake, will undermine their efforts to conduct other voter education activities, and will require them to expend unplanned resources helping registered voters stay registered or re-register. Nicholas Decl. ¶¶ 8-9; Montford Decl. ¶ 9. Specifically, requiring the State and County Defendants to unnecessarily implement new, and therefore untested and potentially unreliable, procedures as requested by Plaintiff here would require Defendant-Intervenors to identify and assist its members and other eligible voters who may be improperly removed from voter rolls and may be unaware of this fact. Nicholas Decl. ¶¶ 8-9; Montford Decl. ¶¶ 9-10. Such voters—that is, those who had previously registered and whose eligibility remains unchanged—may learn for the first time that their names have been removed

3

from the registration rolls when they submit an absentee ballot request form or when they turn out to vote in person. To prevent such voters from being disenfranchised, Defendant-Intervenors would need to shift their efforts to re-registering improperly removed voters, including voters that they may have previously registered. Nicholas Decl. ¶¶ 9-10; Montford Decl. ¶¶ 10-11.

Furthermore, the unnecessary and risky voter registration cull requested by Plaintiff here would require the Defendant-Intervenors (not to mention the State and County Defendants) to divert precious resources that are crucial to addressing the significant challenges presented by the current COVID-19 pandemic, further diminishing the Defendant-Intervenors' ability to promote voter participation and preventing Defendant-Intervenors from reaching and registering new North Carolina voters, including voters in Mecklenburg and Guilford Counties. Nicholas Decl. ¶¶ 11-12; Montford Decl. ¶¶ 12-13. Defendant-Intervenors therefore have a strong interest in opposing the aggressive—and potentially unlawful—list-maintenance strategies that Plaintiff would have the Court order as relief on Count I of the Complaint. Indeed, Defendant-Intervenors have at least as much an interest as the Plaintiff with respect to the relief requested in Count I of the Complaint.

## II. The Court Should Grant the Motion to Intervene.

The Court should grant Defendant-Intervenors' Motion to Intervene. As discussed below, Defendant-Intervenors are entitled to intervention as of right because: (1) their motion is timely; (2) they have a strong interest in ensuring eligible North Carolina, and specifically Guilford and Mecklenburg County, voters are able to register to vote, remain registered to vote, and cast a ballot; (3) the unnecessary additional list maintenance requested by Plaintiff is not required by the NVRA and will impair this interest; and (4) the current Defendants—public entities and public servants with limited resources and broad constituencies—cannot adequately represent this interest, especially while addressing the ongoing COVID-19 global pandemic.

Alternatively, Defendant-Intervenors should be granted permissive intervention because they seek to oppose the relief Plaintiff seeks as such relief will undermine Defendant-Intervenors' voter-registration work and threatens to violate the NVRA. Thus, Defendant-Intervenors' interests in preventing Plaintiff from prevailing present questions of law and fact in common with those presented in the main action. Moreover, intervention will not unduly delay or prejudice the rights of the existing parties.

### A. The Court Should Grant the Motion to Intervene as of Right.

Pursuant to Federal Rule of Civil Procedure 24(a)(2), Defendant-Intervenors are entitled to intervene in this action as of right. In the Fourth Circuit, a party seeking to intervene as of right under Rule 24(a)(2) must meet four requirements:

> (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

*Hous. Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). If a party seeking to intervene meets these requirements, it is abuse of discretion to deny the motion. *See, e.g.*, *Teague v. Bakker*, 931 F.2d 259, 260–62 (4th Cir. 1991). Moreover, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Defendant-Intervenors easily satisfy Rule 24(a)(2)'s requirements and the Court should grant their intervention as a matter of right.

#### i. The Motion to Intervene Is Timely.

In assessing the timeliness of a motion to intervene, courts in this Circuit consider three factors: (1) "how far the underlying suit has progressed"; (2) "the prejudice any resulting delay might cause the other parties"; and (3) if the motion is tardy, "why the movant was tardy" in filing

it. *Alt v. Env. Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014); *see also Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 98 (W.D.N.C. 2009) (Mag. J). However, "[t]he most important consideration is whether the delay has prejudiced other parties[.]" *Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980). These factors compel a finding that Defendant-Intervenors' motion to intervene is timely.

The present motion by the Defendant-Intervenors was filed within two weeks of the April 9, 2020 Complaint and well before the June 4, 2020 deadline for responsive pleadings by Defendants North Carolina, the North Carolina Board of Election, and Karen Brinson Bell (the "State Defendants") and Defendants Guilford County Board of Elections, Charlie Collicut, and Horace Kimel, Jr. (the "Guilford County Defendants"). *See* Dkt. No. 15 (granting the State Defendants' Motion for Extension of Time to File Answer or Otherwise Plead); Dkt. No. 18 (granting the Guilford County Defendants' Motion for Extension of Time).[1] As of the filing of this Motion, no responsive pleadings have been filed and no hearing before this Court has been scheduled. The Defendant-Intervenors may therefore participate in the present case without causing delay or prejudice to any party and, as this case remains at a "relatively early stage," and the motion should be found timely. *See Diagnostic Devices, Inc.* 257 F.R.D. at 98; *see also* Order, *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. Of Elections*, Case No. 5:16-CV-683 (Dec. 1, 2016) (Exhibit 4) (finding timely motion to intervene on behalf of defendants in NVRA matter where "the case ha[d] not significantly progressed"); *Bellitto v. Snipes*, Case No. 16-cv-61474, 2016 U.S. Dist. LEXIS 128840, at *5 (S.D. Fla. Sept. 20, 2016) (finding motion by defendant-

---

[1] As of the date of this Motion, Plaintiff has not filed any return of service or waiver forms for any of the Defendants.

intervenors in NVRA matter timely where the "case ha[d] not progressed beyond the initial pleading stage").

### ii. Defendant-Intervenors Have a Substantial Interest in this Case.

In order to intervene as a matter of right, the Supreme Court has recognized that a party must have a "significantly protectable interest." *Teague*, 931 F.2d at 261 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). The interests of Defendant-Intervenors to ensure that qualified voters are able to register and remain registered, as set forth in detail in Part I, *supra*, are commonly recognized interests supporting intervention by right. *See, e.g.*, *Bellitto*, 2016 U.S. Dist. LEXIS 128840, at *5-6 (granting motion to intervene by right on behalf of defendant in NVRA matter); *NAACP v. Duplin Cty.*, No. 7:88-CV-00005-FL, 2012 U.S. Dist. LEXIS 12513, at *14 (E.D.N.C. Feb. 2, 2012) (granting motion to intervene by right where the defendant-intervenor held an interest in the "circumstances of voting in Duplin County"). They are also recognized under the NVRA, which provides private aggrieved parties such as the Defendant-Intervenors a right of action to prevent improper removal of registered voters. 52 U.S.C. § 20510(b); *see also, e.g.*, *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 558–59 (S.D.N.Y. 2018) (holding organization stated plausible NVRA claim against removal of inactive voters from voter lists); *Common Cause Ind. v. Lawson*, 327 F. Supp. 3d 1139, 1156 (S.D. Ind. 2018) (enjoining Indiana voter list maintenance program under NVRA); *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 16-cv-1274, 2016 WL 6581284, at *11 (M.D.N.C. Nov. 4, 2016) (enjoining "mass cancelations" of voter registrations in three North Carolina counties).

### iii. Denial of Defendant-Intervenors' Motion Will Impair Their Interests.

When seeking intervention as of right, the applicant must show denial of the motion "would impair or impede the applicant's ability to protect its interest[.]" *Moore*, 193 F.3d at 839. The court-ordered "general program" that Plaintiff seeks to compel in Count I, if granted, threatens the

recognized interests of Defendant-Intervenors. The threat is particularly grave because the requested relief could itself violate the NVRA, which prohibits removal of registered voters except in specific, enumerated circumstances and in accordance with required safeguards. *See* 52 U.S.C § 20507(a)(3)-(4), (b)-(d). While Plaintiff claims it seeks to compel "reasonable" list maintenance efforts, it nowhere identifies which voters it believes should be removed or on what grounds they are ineligible. Rather, its claim is simply that the purportedly "abnormally high" voter registration rate must be reduced—through the elimination of some arbitrary number of registered voters—to a level Plaintiff considers acceptable, raising a substantial risk that the removals Plaintiff seeks violate the NVRA. In similar cases, plaintiffs have demanded practices that have been shown to sweep in eligible voters. For example, in a case against Broward County, Florida, making nearly identical allegations to those here, plaintiffs sought to compel the county to use information from the federal Systematic Alien Verification for Entitlements system to identify non-citizens, despite the fact that the program was not designed for that purpose and the Eleventh Circuit previously found the database a deeply flawed method for registrant verification. *See Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *38–*39 (Mar. 30, 2018); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (noting that Florida's use of SAVE created a "realistic probability that [plaintiffs] would be misidentified" and erroneously removed from the rolls). Any court-ordered action that would result in eligible voters' registrations being put at risk by unnecessary, improper, or unlawful purges of the voting rolls would directly harm the interests of Defendant-Intervenors, both by undermining the considerable time and energy they have *already spent* to register North Carolina, Mecklenburg County, and Guilford County voters, and by forcing them to expend considerable *additional resources* to educate and *reregister* these voters.

8

Case 3:20-cv-00211-RJC-DCK   Document 20   Filed 04/21/20   Page 8 of 17

Finally, if their motion to intervene is denied, Defendant-Intervenors may not be able to protect their interests through collateral litigation under the private right of action provided by 52 U.S.C. § 20510(b). Should Plaintiff obtain relief through a court order or a court-approved settlement agreement, the *stare decisis* effect of this Court's action may thwart Defendant-Intervenors in challenging those removals under the NVRA. Accordingly, the outcome of any settlement or trial could effectively determine the policies and practices impacting Defendant-Intervenors without their involvement and input. This practical disadvantage constitutes the prejudice contemplated by Rule 24(a) and supports intervention as of right. *See Francis v. Chamber of Commerce of U.S.*, 481 F.2d 192, 195 n.8 (4th Cir. 1973) ("*[S]tare decisis* by itself may furnish the practical disadvantage required under 24(a)."); *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 121 (4th Cir. 1981) (finding a district court judgment creates "the kind of practical disadvantage that has been thought sufficient to warrant intervention of right" (internal quotation omitted)). The interests of justice and judicial efficiency mandate that Defendant-Intervenors be made a party in the current proceeding so that these issues may be considered and litigated simultaneously. *See*, *e.g.*, *Feller*, 802 F.2d at 730 ("[A]n interest in preventing conflicting orders may be sufficient for intervention as of right.").

    **iv.**  **The Defendants May Not Adequately Protect the Interests of Defendant-Intervenors.**

In determining whether existing parties "adequately represent" the interests of Intervenor Applicants, Rule 24(a)(2)'s "third requirement [is satisfied] if it is shown that representation of its interest '*may be*' inadequate." *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) (emphasis in original); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). "[T]he burden of making [such a] showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10. Financial constraints on the current defendants' ability to defend the action can indicate inadequate

9

Case 3:20-cv-00211-RJC-DCK   Document 20   Filed 04/21/20   Page 9 of 17

representation under this standard. *See Teague*, 931 F.2d at 262 (finding district court erred in ruling proposed intervenors' interests were adequately represented "[g]iven the financial constraints on the [defendants'] ability to defend the present action").

Plainly, Plaintiff and Defendant-Intervenors have different views about the interpretation and application of the NVRA. Plaintiff seeks to use the NVRA as a sword to purge registrants, while Defendant-Intervenors invoke the NVRA as a shield to protect registrants from the very type of error-prone voter purges that are the inevitable result of Plaintiff's demand to arbitrarily reduce the voter registration rate in Defendant counties.

The Defendants' interests and interpretation of the NVRA also may not be aligned with those of Defendant-Intervenors. The Defendants consist of several public bodies and officials with limited resources and broad responsibilities that are currently confronting an unprecedented public health crisis.[2] These entities and individuals have distinct governmental interests—including managing their respective offices, stewarding limited public resources, and running elections—

---

[2] Of note, on March 26, 2020, the Executive Director of the State Board of Elections informed lawmakers of actions taken by the agency in response to the spread of COVID-19 and asked lawmakers to enact fifteen proposed changes to North Carolina's election laws "to address the impacts of the coronavirus pandemic on [North Carolina] elections." *See* Recommendations to Address Election-Related Issues Affected by COVID-19, N.C. State Bd. of Elections (Mar. 26, 2020), https://s3.amazonaws.com/dl.ncsbe.gov/sboe/SBE%20Legislative%20Recommendations_COVID-19.pdf. Thus, while Plaintiffs are pursuing court-ordered purging of North Carolina voting rolls, State and county boards of elections will be planning for, among other things, an expected ten-fold increase in the number of voters who may cast their votes by absentee ballot, a troubling shortfall in the number of poll workers available given that the average age of poll workers in North Carolina is around 70, placing them in the at-risk category for COVID-19, and potential budget cuts impacting the operations of local election boards. *Id.*; *see also* Danielle Battaglia, Voting by Mail, Election Day Holiday Recommended for N.C.'s November Election, Winston-Salem J. (Apr. 10, 2020), https://bit.ly/2XwjyBB; Tyler Dukes, Counties Ask Local Election Board To Cut Funding As COVID-19 Impacts Loom, WRAL (Apr. 9, 2020), https://www.wral.com/coronavirus/counties-ask-local-election-boards-to-cut-funding-as-covid-19-impacts-loom/19047680/.

that may affect their approach in defense of this litigation. The interests of Defendant-Intervenors, on the other hand, are more narrowly focused on protecting and preserving the right to vote of their members and those they register and conserving their limited resources. Under nearly identical circumstances, other courts have found that public officials may not adequately protect the rights of proposed intervenors where their "interpretation of the NVRA may not be aligned and [their] reasons for seeking dismissal . . . are different." *Bellitto*, 2016 U.S. Dist. LEXIS 128840, at *6 (granting motion to intervene by right); *see also Kobach v. U.S. Election Ass. Comm'n*, Case No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (granting motion to intervene by the League of Women Voters and others after finding they had "clearly shown their interests in either increasing participation in the democratic process, or protecting voting rights" and that their viable interests could reasonably diverge from those of "existing government Defendants" who "may not adequately represent Applicants' specific interests").

The danger that Defendants cannot adequately represent Defendant-Intervenors' interests is particularly acute given that additional resources are required to register voters in light of the COVID-19 pandemic and the forthcoming presidential election. Specifically, since Governor Cooper's declaration of a State of Emergency on March 10, 2020,[3] several of the most-used avenues for voter registration (such as the DMV) have closed,[4] requiring additional voter registration efforts to compensate. Nicholas Decl. ¶ 12; Montford Decl. ¶ 13. Furthermore,

---

[3] *See* "Governor Cooper Declares State of Emergency To Respond To coronavirus COVID-19, https://governor.nc.gov/news/governor-cooper-declares-state-emergency-respond-coronavirus-covid-19 (Mar. 10, 2020).

[4] *See* "NCDMV Services in Response to COVID-19," https://www.ncdot.gov/dmv/offices-services/locate-dmv-office/Pages/dmv-offices-closed.aspx (Last updated Mar. 17, 2020) ("For the health and safety of our customers and employees during the COVID-19 pandemic, some N.C. Department of Motor Vehicles driver license offices will be closed starting Wednesday, March 18.").

11

Case 3:20-cv-00211-RJC-DCK   Document 20   Filed 04/21/20   Page 11 of 17

additional resources are needed to enroll voters to receive absentee ballots, a measure that is crucial to preserve public health without sacrificing voter turnout. Nicholas Decl. ¶ 12; Montford Decl. ¶ 13.

In light of the myriad of variables at play in the upcoming elections, the Defendants' interests in this matter and interpretation of the NVRA as public entities and servants almost certainly will not align with the interests of Defendant-Intervenors; even if they do align, Defendants cannot be expected to adequately pursue those interests.

As Defendant-Intervenors have satisfied all the requirements for intervention as of right, their motion should be granted.

### B. The Court Should Grant Permissive Intervention Because Defendant-Intervenors' Defenses and the Claims and Defenses of the Plaintiff and Defendants Have Common Questions of Law and Fact.

In the event that the Court finds the requirements for intervention as of right have not been satisfied, Defendant-Intervenors request that this Court grant them permissive intervention. Permissive intervention may be granted under Rule 24(b) if a would-be intervenor establishes that the application to intervene was timely and "alleges . . . a claim or defense that shares . . . a common question of law or fact" with the main action. *Diagnostic Devices, Inc.*, 257 F.R.D. at 100 (referencing Fed. R. Civ. P. 24(b)(1)(B)).

As discussed above, Defendant-Intervenors' Motion to Intervene is timely and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additionally, Defendant-Intervenors' defense and the main action both concern an identical legal question—whether the Defendant's list-maintenance activities satisfy the NVRA's requirements.

The Defendant-Intervenors intend to file a motion for judgment on the pleadings on Count I of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(c).

12

Specifically, Plaintiff's allegations that the Defendants have failed to comply with the NVRA are insufficient to state a claim for relief here where they are founded wholly on data that is insufficient as a matter of law and otherwise conclusory. *See, e.g., Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 260 (4th Cir. 2009) (affirming dismissal of claims where plaintiff alleged only "bare assertions devoid of further factual enhancement" because such "conclusory statements are insufficient as a matter of law" (internal quotations omitted)).

Moreover, "[i]n determining whether to allow permissive intervention, courts may consider whether such intervention will 'contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Students for Fair Admissions v. Univ. of N.C.*, 319 F.R.D. 490, 496 (M.D.N.C. 2017) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) (citing *Spangler,* 552 F.2d at 1329, for the same proposition). This factor weighs particularly heavily here, where courts in similar cases have found that the perspective of impacted voters and the deep experience with NVRA enforcement brought by groups like Defendant-Intervenors added significant value. For example, in a case raising claims nearly identical to those asserted here, the court relied heavily on expert testimony put on by Defendant-Intervenors in evaluating the plaintiff's claims—evidence the governmental defendant was ill-equipped to marshal on her own. *See Bellitto v. Snipes*, 935 F.3d 1192, 1208 (11th Cir. 2019) ("The district court . . . explicitly credited [intervenor's] data expert, and discounted the testimony of [the plaintiff's] expert, and concluded that the registration rates presented by [it] were inaccurate."); *Bellitto*, 2018 U.S. Dist. LEXIS 103617, at *31 (finding Plaintiff's "argument that

13

[the] County's registration rates are unreasonably high is . . . unsupported by any credible evidence" based on testimony presented by the intervenor's expert).

Finally, courts in this and other circuits have granted motions to intervene in similar matters and by similar proposed Defendant-Intervenors. *See, e.g.,* Order, *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. Of Elections*, Case No. 5:16-CV-683 (Dec. 1, 2016) (Exhibit 4); *Kobach*, 2013 U.S. Dist. LEXIS 173872 (granting the motion to intervene as defendants of several nonprofit groups); *Florida v. United States*, 820 F. Supp. 2d 85, 86-87 (D.D.C. 2011) (noting that "organizations that have a special interest in the administration of Florida's election laws" were granted leave to intervene permissively).

As the Defendant-Intervenors' forthcoming request for judgment on Count I presents the same issues of law and fact that are presented in the main action, and all other factors are satisfied, the Court should grant permissive intervention here.

## II. CONCLUSION

The Court should grant Defendant-Intervenors' motion to intervene as of right or, in the alternative, for permissive intervention.

Dated: April 21, 2020.

Respectfully submitted,

*/s/ Allison Riggs*

Chiraag Bains*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

Stuart Naifeh*
Emerson Gordon-Marvin*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6055
snaifeh@demos.org
egordonmarvin@demos.org

*Pro hac vice application forthcoming*

Allison J. Riggs (State Bar #40028)
Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942
Email: Allison@southerncoalition.org
jeff@southerncoalition.org
hilaryhklein@southercoalition.org

# CERTIFICATE OF SERVICE

I certify that on the 21st day of April, 2020 the foregoing MEMORANDUM IN SUPPORT OF THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA AND THE NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE'S MOTION TO INTERVENE AS DEFENDANTS and accompanying exhibits was filed via the Court's CM/ECF filing system, which will send a notification of filing to all counsels of record as indicated in the attached Service List. Counsel for Defendants Mecklenburg County Board of Elections, Michael G. Dickerson, and Carol Hill Williams has agreed to accept service by electronic mail on behalf of these defendants for this motion, and was served with the aforementioned documents via electronic mail as indicated in the attached Service List. Plaintiff's Counsel H. Christopher Coates has agreed to accept service by electronic mail and was served with the aforementioned documents via electronic mail as indicated in the attached Service List.

*/s/ Allison J. Riggs*
Allison J. Riggs

# SERVICE LIST

Eric W. Lee
Judicial Watch, Inc.
425 Third Street, SW, Suite 800
Washington, DC 20024
202-646-0008
Email: elee@judicialwatch.org
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

Robert D. Popper
Judicial Watch, Inc.
425 Third Street, SW, Suite 800
Washington, DC 20817
202-646-5173
Fax: 202-646-5199
Email: rpopper@judicialwatch.org
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

T. Russell Nobile
Judicial Watch Inc.
P.O. Box 6592
Gulfport, MS 39506
228-223-7820
Email: Rnobile@judicialwatch.org
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

John Mark Payne
Guilford County Attorney's Office
301 West Market Street
PO Box 3427
Greensboro, NC 27402
(336) 641-3686
Fax: (336) 641-3642
Email: mpayne@guilfordcountync.gov
*Attorney for Defendants Guilford County Board of Elections, Charlie Collicutt, and Horace Kimel, Jr.*
*Served by CM/ECF Notification*

H. Christopher Coates
934 Compass Point
Charleston, SC 29412
843-609-7080
Attorney for Plaintiff
*Served by electronic mail to curriecoates@gmail.com with consent of counsel*

Mark A. Jones
Bell, Davis & Pitt P.A.
100 North Cherry St., Ste 600
Winston-Salem, NC 27101
336-714-4122
Fax: 336-714-4101
Email: mjones@belldavispitt.com
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

Paul M. Cox
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
919-716-6932
Fax: 919-716-6763
Email: pcox@ncdoj.gov
*Attorney for Defendants State of North Carolina, North Carolina State Board of Elections, and Karen Brinson Bell*
*Served by CM/ECF Notification*

Mike Barnhill
Womble Bond Dickinson (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202-6037
704-331-4960
Email: Mike.Barnhill@wbd-us.com
*Attorney for Defendants Mecklenburg County Board of Elections, Michael G. Dickerson, and Carol Hill Williams*
*Served by electronic mail with consent of counsel*