# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### CHARLOTTE DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> NORTH CAROLINA; THE NORTH CAROLINA STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her capacity as the Executive Director of the North Carolina State Board of Elections; THE MECKLENBURG COUNTY BOARD OF ELECTIONS; MICHAEL G. DICKERSON, in his official capacity as the Director of Elections for Mecklenburg County; CAROL HILL WILLIAMS, in her capacity as the Chair of the Mecklenburg County Board of Elections; THE GUILFORD COUNTY BOARD OF ELECTIONS; CHARLIE COLLICUTT, in his official capacity as Director of Elections for Guilford County; and HORACE KIMEL, JR., in his capacity as Chair of the Guilford County Board of Elections, <br>                  Defendants, and <br><br> THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA AND THE NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE, <br><br>      Proposed Defendant-Intervenors. | Civil Action No. 3:20-cv-211 |

## REPLY IN SUPPORT OF THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA AND THE NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE'S MOTION TO INTERVENE AS DEFENDANTS

2

Judicial Watch ("Plaintiff") opposes the League of Women Voters of North Carolina's ("LWVNC") and the North Carolina A. Philip Randolph Institute's ("APRI" and, together with LWVNC, "Defendant-Intervenors") intervention in this case by repeatedly asserting that it is seeking no relief beyond an order requiring that the State of North Carolina ("State Defendant") and Mecklenburg and Guilford Counties (the "County Defendants") simply follow the law. In its misguided effort to cast Defendant-Intervenors' interest in protecting the rights of registered voters as unrelated to its own effort to force Defendants to purge those voters from the rolls, Plaintiff misstates the requirements of the National Voter Registration Act of 1993 ("NVRA") and misrepresents its own allegations in the Complaint.

Defendant-Intervenors' interest in preventing the wrongful removal of their members, voters they have registered, and other North Carolinians from the voter rolls, is vital to their missions and protectable under the NVRA, and that interest is threatened by the relief requested in the Complaint. This interest cannot be adequately protected by Defendants whom Defendant-Intervenors—and others working to prevent wrongful voter purges—have been forced to sue in the past for violating the very law at issue in this case. Defendant-Intervenors respectfully request that this Court grant their motion to intervene as of right or, alternatively, for permissive intervention.

I. **The Court Should Grant Intervention as of Right**

a. Defendant-Intervenors have a significantly protectable interest

Defendant-Intervenors have a significantly protectable interest in ensuring that the NVRA is enforced and interpreted appropriately such that their members and other eligible voters they have expended their limited resources registering to vote are not removed from the voter rolls. *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) ("[L]iberal intervention is desirable to dispose

3

of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967))).

As noted in Defendant-Intervenors' motion, courts in this and other circuits have recognized this interest. In *Bellitto v. Snipes*, the court granted intervention by right on behalf of a group asserting, like Defendant-Intervenors here, that its interest and the interests of its members "would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs in Count I of their Amended Complaint, which [intervenor] maintains could itself violate the NVRA." Case No. 16-cv-61474, 2016 U.S. Dist. LEXIS 128840, at *6 (S.D. Fla. Sept. 20, 2016). In *NAACP v. Duplin County*, the United States District Court for the Eastern District of North Carolina granted intervention by right to "interested citizens and registered voters" from Duplin County in litigation involving changes to the election method there, noting that even though the claimed interest did not "clearly correspond to the interests set forth in the case law," the Fourth Circuit's direction in *Feller* endorsing "liberal intervention" necessitated intervention nonetheless. Case No. 7:88-CV-00005-FL, 2012 U.S. Dist. LEXIS 12513, at *14 (E.D.N.C. Feb. 2, 2012).

These same interests and considerations apply here, where there is a dispute over what the applicable law requires and how the interpretation of that law will affect individual voters. The right of Defendant-Intervenors' members to remain registered so they may exercise their right to vote is beyond dispute. If the State and County Defendants unnecessarily implement new, and therefore untested and potentially unreliable, procedures as requested by Plaintiff here, Defendant-Intervenors would be required to identify and assist their members and other eligible voters who may be improperly removed from voter rolls and may be unaware of this fact, diverting much needed resources from other organizational activities. Nicholas Decl. ¶¶ 8-9 (Ex. 2 to Mot. To Intervene, ECF No. 20-3); Montford Decl. ¶¶ 9-10 (Ex. 3 to Mot. To Intervene, ECF No. 20-4).

4

Additionally, if eligible voters whom Defendant-Intervenors have expended their limited resources to register are removed from the voting rolls, then Defendant-Intervenors will have to expend additional limited resources to re-register these people and their original voter registration efforts will have been nullified. Nicholas Decl. ¶¶ 8-9 (Ex. 2 to Mot. To Intervene, ECF No. 20-3); Montford Decl. ¶ 9 (Ex. 3 to Mot. To Intervene, ECF No. 20-4).

These interests are plainly implicated in this litigation. Plaintiff contends that the Defendants have failed to satisfy their obligation under the NVRA to make a reasonable effort to remove voters who have died or changed residence. Defendant-Intervenors contend that Defendants have not only satisfied this obligation but have gone beyond it, and that any further removals are not only not required, but threaten to erroneously sweep in eligible voters, potentially depriving them of their right to vote and requiring Defendant-Intervenors to expend resources to ensure that these individuals remain registered.

Thus, contrary to Plaintiff's assertion in its Brief, Defendant-Intervenors' interest in this litigation is not a mere "political preference[]." Pl. Resp. at 2. Rather, Defendant-Intervenors "stand to gain or lose" depending on the outcome of this matter. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). At base, Defendant-Intervenors' interest concerns the individual right to vote of specific North Carolina voters whose rights could be harmed by an adverse judgment or settlement in this case. Indeed, this interest is much more concrete than the abstract political interest Plaintiff asserts in the Complaint, which is predicated on its members' alleged "concern[] about the state of the nation's voter registration rolls." Compl. ¶ 24 (ECF No. 1). Defendant-Intervenors' interests are heightened given Plaintiff's choice to single out Guilford and Mecklenburg Counties—counties that are home to large African American populations and three of the state's historically black colleges, and counties where Defendant-Intervenors perform

substantial work—despite Plaintiff's allegation that its analysis found violations of the NVRA in "a significant proportion of North Carolina's 100 counties." Compl. ¶ 37.

Plaintiff's contention that Defendant-Intervenors have no protectable interest because Plaintiff seeks removal only of ineligible voters is wrong as a matter of law and fact, and is belied by Plaintiff's allegations and the relief that it seeks. Plaintiff's contention that it is not seeking "new" and "untested" list maintenance procedures is illogical. In the Complaint, Plaintiff expressly seeks an order requiring Defendants to "develop and implement" a voter removal program. Compl. at 16, Prayer for Relief ¶ c. Given that Defendants already operate a voter removal program that satisfies the NVRA, *see* North Carolina State Board of Elections, *Maintaining the Voter Registration Database in North Carolina* (Jul. 27, 2017) ("List Maintenance Manual"),[1] Plaintiffs can only be seeking a "new" program that would include processes that go beyond those Defendants currently implement and that are therefore "untested" in these jurisdictions.

Plaintiff further contends that the removals it seeks are not "unnecessary, improper, or unlawful," as Defendant-Intervenors assert, and that Defendant-Intervenors therefore have no interest at stake here. This argument presumes the very issue in dispute in this litigation: whether the removals Plaintiff seeks are required—or even permitted—by the NVRA and whether, regardless of whether the removals are lawful, they will properly target only ineligible voters or will improperly sweep in eligible voters. Plaintiffs' bare assurances that it will seek nothing that could harm Defendant-Intervenors' interests is speculative and insufficient to defeat intervention.

Moreover, contrary to Plaintiff's protestations, its own allegations reveal that the purges it seeks are indeed unnecessary, improper, and unlawful. In both the Complaint and Plaintiff's

---

[1] *Available at*
https://s3.amazonaws.com/dl.ncsbe.gov/Public_Records_Requests/Judicial_Watch_04122019/North_Carolina_ListMaintenancePolicy.pdf.

Opposition, Plaintiff argues that the Defendants have violated the NVRA by failing to remove voters who have not voted "since prior to election day 2014." *See* Compl. ¶¶ 55-57; Pl. Resp. at 4 (ECF No. 28). Indeed, this is the *only* category of voters Plaintiff has identified as allegedly requiring removal under the NVRA's mandate that states have a program to remove voters who have changed residence or died. *See* 52 U.S.C. § 20507(a)(4). First, removal of these voters is *unnecessary* because it is not mandated by the NVRA where Defendants already implement a program that is sufficient to satisfy the NVRA's "reasonable effort" requirement. *See* List Maintenance Manual at 10-18 (describing North Carolina's twice annual National Change of Address program); *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019) (explaining that use of the National Change of Address program is sufficient to satisfy the NVRA's "reasonable effort" requirement). Second, removal of these voters would be *improper* because forcing the state to purge voters on the aggressive "no-contact" timeline Plaintiffs demand, with no evidence other than the lack of voting activity that the voter has moved or died, has been shown to sweep up eligible voters.[2] Third, purging voters with no voting activity since 2014 would be *unlawful* because (a) the NVRA permits removal only where the voter fails to vote in two federal election cycles *after failing to reply to a notice*, and that period has not yet expired for these voters, *see* 52 U.S.C. § 20507(d)(1); List Maintenance Manual, at 5 (indicating that voters with no activity in 2014 were sent confirmation notices in 2017); and (b) imposing additional or different list-maintenance procedures in only two of North Carolina's 100 counties, as Plaintiff seeks, would

---

[2] *See* Michael C. Herron and Daniel A. Smith, "Estimating the Differential Effects of Purging Inactive Registered Voters" (Incomplete Conference Draft, Jul. 25, 2018), at 3-4, *available at* https://esra.wisc.edu/papers/HS.pdf. This is one area (concerning the effect of erroneous list maintenance procedures on eligible voters), among others, to which the Defendant-Intervenors would be able to contribute expert testimony during discovery.

7

result in a list program that is non-uniform and very likely discriminatory, in violation of the NVRA. *See* 52 U.S.C. § 20507(b)(1).

Finally, Plaintiff's attempt to distinguish this case from the long list of other matters in which intervention has been granted or where similar interests in NVRA cases were recognized is unavailing. *See* Pl. Resp. at 9. Plaintiff's failure to specify the precise nature of the illegality it alleges or the precise contours of the program it seeks is hardly grounds for concluding that Defendant-Intervenors' interests are not at issue. Plaintiff cannot hide behind the vagueness of its allegations to defeat intervention and thereby benefit from the insufficiency of its own complaint, which nowhere plausibly alleges a failure of reasonable measures. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level." (internal citations and quotations omitted)).

Similarly, Plaintiff's reliance on *Judicial Watch v. Logan*, Case No. 2:17-cv-8948 (C.D. Cal. 2017), is misplaced. Not only was the denial of intervention in *Logan* vacated by the Ninth Circuit in *Judicial Watch v. Padilla*, Nos. 18-56102, 18-56105, 2019 U.S. App. LEXIS 8347, at *3 (9th Cir. Mar. 20, 2019), but it is an outlier that runs contrary to the "liberal intervention" standard endorsed by the Fourth Circuit in *Feller*, and followed under similar circumstances in *NAACP v. Duplin County*, discussed above.[3]

---

[3] Plaintiff also relies on *McHenry v. Commissioner*, 677 F.3d 214 (4th Cir. 2012), to contend that Defendant-Intervenors' interests are too "general" to support intervention. Pl. Resp. at 11. In *McHenry*, the Virgin Islands requested to intervene in a matter interpreting the U.S. Tax Code by contending the resulting statutory interpretation would affect its enforcement of certain tax provisions. However, the court determined that, in reality, "the Virgin Islands cannot legitimately claim to be administering any of these provisions of the U.S. Tax Code." 677 F.3d at 220. By contrast, in this matter Plaintiff does not dispute the truth of Defendant-Intervenor's asserted

b. <u>Denial of Defendant-Intervenors' intervention will impair and impede their ability to protect their interest</u>

Intervention of right must be granted if "disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a) (emphasis added); *see also Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). An order of this court or a settlement could impair the Defendant-Intervenors' rights by resulting in the removal of eligible voters who are their members or who they expended resources registering to vote.[4]

Plaintiff argues that Defendant-Intervenors' interests cannot be impaired because "the alleged harm from 'improper' removals of those sent confirmation notices would only occur from two to four years after any such remedy is ordered." Pl. Resp. at 13. Even if true, the mere fact that the impairment of Defendant-Intervenors' interests would occur at some point in the future is not grounds for denying intervention. Here, any list maintenance that leads to the removal of eligible voters will impair Defendant-Intervenors' interests, regardless of whether it occurs before or after the 2020 Presidential Election.

Plaintiff also inaccurately contends that "future events are not a basis for granting intervention." Pl. Resp. at 13. As an initial matter, Rule 24 requires intervention where disposing of the action "may" impair or impede the movant's ability to protect its interest—not "will" or "has" impeded that interest. Fed. R. Civ. P. 24(a). The Rule therefore contemplates potential future

---

activities and interests in protecting eligible voters that it has registered from unlawful and unnecessary purging.

[4] Although the relief Plaintiff seeks plainly runs counter to the NVRA, Defendant-Intervenors are not presuming that this Court would issue an order or approve a settlement that violates federal law—contrary to Plaintiff's contention. Because States have considerable leeway under the NVRA in how they carry out their list-maintenance obligations, even a permissible program could negatively impact eligible voters, and Defendant-Intervenors' involvement will help ensure that any such impacts are mitigated as much as possible.

9

events as a basis for granting intervention. Furthermore, the case on which Plaintiff relies for its gross overstatement, *United States v. Michigan*, 424 F.3d 438 (6th Cir. 2005), supports at best a much narrower principle and, in any event, is inapposite. In *Michigan*, the proposed intervenors were seeking a declaration regarding the Native American Tribes' use of land outside the confines of their reservations with respect to logging, easements, and other specific uses. *Id.* at 442-43. In doing so, they asserted affirmative defenses in their proposed answer that sought to "inject management and regulatory issues that are not yet before the court." *Id.* at 444. The court held that "[w]hile the proposed intervenors may be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court." *Id.* at 444. Here, the interests Defendant-Intervenors assert are directly implicated by the issues Plaintiff put before the court in its Complaint. If the court grants the relief Plaintiff seeks, the question is not *whether* that relief will be implemented and Defendant-Intervenors' interests impaired, but *when*.

Additionally, contrary to Plaintiff's argument that a decision in this case or a court-approved settlement will have no *stare decisis* effect, an outcome that mandates additional list maintenance procedures will very likely preclude or complicate Defendant-Intervenors' ability to assert their rights in a separate suit. Even though the NVRA offers a private right of action in 52 U.S.C. § 20510(b), any challenge to a purge of an eligible voter pursuant to a program that has the blessing of this Court will necessarily have to address the *stare decisis* effect of this Court's decisions. Further, forcing Defendant-Intervenors to go through the arduous process of filing a separate case to protect and vindicate the rights of eligible voters who may be improperly removed is a waste of judicial resources when those rights can be protected in this case.

*Ohio Valley Environmental Coalition, Inc. v. McCarthy*, 313 F.R.D. 10 (S.D.W.V. 2015), which Plaintiff cites for its argument that collateral litigation is sufficient to protect Defendant-

Intervenors' rights, is inapplicable to the facts here. The plaintiff in *McCarthy* sought to compel the EPA to institute a rulemaking, and the court held that the proposed intervenor would have adequate opportunity to protect its interests in the administrative process should the plaintiffs prevail. *Id.* at *26-27. The court held that the mere fact that the EPA might be ordered to initiate a rulemaking that might ultimately result in a rule that would impair the intervenor's interests was insufficient to support intervention. *Id.*[5] In this case, there will be no post-judgment proceeding such as a rule-making in which Defendant-Intervenors could participate to defend and vindicate their interests. If Defendant-Intervenors are not permitted to intervene, they will be faced with the prospect of bringing a facial challenge to a list-maintenance program this Court had approved or waiting until after the damage is done—*i.e.*, after an eligible voter has already been removed—to bring an as-applied challenge to a removal that had occurred pursuant to court-approved or court-ordered list-maintenance. Putting aside the lack of judicial efficiency to this approach, Defendant-Intervenors should not have to rely on an *ex-post* remedy to protect their interest in protecting eligible voters when there is an opportunity to protect these voters before such an important right is stripped away.

      c. <u>The State and County Defendants Are Inadequate Representatives of Defendant-Intervenors' Interest</u>

---

[5] Plaintiff's reliance on *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993), is also inapposite because the proposed intervenors were trying to protect a court's ruling in their favor. In this case, Defendant-Intervenors are not seeking to preserve the favorable effects of *stare decisis* but are seeking to prevent the "practical impairment" of any decision of this court or settlement between the Plaintiff and Defendants. *See United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988). Similarly, Plaintiff's reliance on *Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 217 (4th Cir. 1976) is inapposite because in *Virginia*, the State of Virginia conceded that the plaintiff already adequately represented its interests and that it was only worried about any settlement agreement. That is not true of Defendant-Intervenors here.

11

The Fourth Circuit has explicitly adopted the standard set forth in *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972), holding that a proposed intervenor need only show that "representation of its interest '*may be*' inadequate" and that this threshold is "minimal." *United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987) (quoting *Trbovich*, with emphasis added by the Fourth Circuit). The Fourth Circuit's holding in *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), on which Plaintiff relies, does not contradict this standard. As an initial matter, the court in *Stuart* nowhere refers to a "strong presumption" of adequate representation as Plaintiff repeatedly and erroneously contends. *See* Pl. Resp. at 2, 14-16, 18. Moreover, the court in *Stuart* held that there is a heightened standard only where the proposed intervenor has the "same objective" as the government party. *Stuart*, 706 F.3d at 352. That is the not the case here.

Notably, none of the Defendants oppose intervention. Moreover, Defendant-Intervenors do not have the same objective as the State and County Defendants: Defendant-Intervenors have an interest in protecting specific eligible voters—their members and voters they have registered—from being improperly and unlawfully removed from the North Carolina Voter Rolls, whereas the State and County Defendants have competing interests in (a) defending their list-maintenance procedures, (b) limiting the state and counties' liability and costs in litigation, and, of course, (3) ensuring eligible voters are able to register to vote and remain registered. The first two considerations could obviously interfere with the effectuation of the third interest, and thus the Defendants must balance these interests in a manner at odds with the interests of Intervenor-Defendants. Consistent with this, the State's submission—in which it does not oppose intervention—identifies the obligations it has to the electorate at large but never contends that the Defendants have the same objectives as the Defendant-Intervenors. State Resp. (ECF No. 29). Nor

12

could it: Programs similar to the no-contact list-maintenance system the State and County Defendants are defending here have been shown to erroneously remove eligible voters, a fact the Defendants are unlikely to highlight. Indeed, Defendant-Intervenors and other organizations with similar missions have been forced to sue the State Defendants in the past to compel their compliance with the very law at issue here, the NVRA. *See Action NC v. Strach*, Case No. 1:15-cv-01063-LCB-JEP (Dec. 15, 2015) (lawsuit by Intervenor A. Philip Randolph Inst. and other organizations challenging violations of Sections 5 and 7 of the NVRA); *N.C. State Conference of the NAACP v. N.C. State Bd. of Elections*, Case No. 1:16CV1274, 2016 U.S. Dist. LEXIS 153249, at *4-8 (M.D.N.C. Nov. 4, 2016) (lawsuit in which defendants the North Carolina State Board of Elections and several county boards of election argued that the purge of eligible voters without notice and during the 90-day quiet period did not violate the NVRA). Thus, the State and County Defendants cannot adequately represent the Defendant-Intervenors' interests because they do not share the same objectives and there is a substantial likelihood their goals will directly conflict with Defendant-Intervenors', just as they have in the past.[6] As they meet the standard set forth in Rule 24(a)(2), Defendant-Intervenors should be granted intervention by right.

---

[6] *See also, e.g., Rutherford Cty. v. Bond Safeguard Ins. Co.*, Case No. 1:09cv292, 2010 U.S. Dist. LEXIS 62878, at *8 (W.D.N.C. May 31, 2010) (upholding the Magistrate Judge's finding that without the intervention of the proposed intervenor, the plaintiff may make a decision that will result in greater costs for the intervenor); *NISH v. Cohen*, 191 F.R.D. 94, 97 (E.D. Va. 2000) ("[I]n at least one previous case, the Secretary of Defense and the Secretary of the Army have argued for an interpretation of the [Randolph-Sheppard] Act at odds with the construction favored by some of the [proposed intervenors]."); *Alt v. United States Envtl. Prot. Agency*, Case No. 2:12-CV-42, 2012 U.S. Dist. LEXIS 194429, at *17 (N.D.W. Va. Oct. 9, 2012) ("[A] mere 'tactical similarity' of the 'present legal contentions' of a plaintiff and a proposed plaintiff-intervenor does not assure adequacy of representation or preclude a plaintiff-intervenor from the opportunity to appear."); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) ("[Courts] have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors [given the government's often broader interests and the aspiring intervenors narrower interest]."); *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (reversing district court's decision to deny motion to intervene where the district

13

## II. Alternatively, the Court Should Grant Permissive Intervention to Defendant-Intervenors

Under Federal Rule of Civil Procedure 24(b), a court may grant a proposed intervenor permissive intervention if the intervenor asserts a claim or defense that shares a "common question of law or fact" with the main action. *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 100 (W.D.N.C. 2009). As noted above, Plaintiff asserts in this litigation that Defendants' voter-list-maintenance program violates the NVRA's list-maintenance obligations. Defendant-Intervenors contend that not only does Defendants' program comply with the NVRA, but the more aggressive purges sought by Plaintiff are unwarranted and in some cases unlawful. *See supra* Section I.a. Thus, Defendant-Intervenors' defense and the main action share common questions of law: "What are the precise contours of the NVRA's list-maintenance requirements?" and "Do the Defendant's list maintenance procedures satisfy those requirements?" These are the same shared questions of law that provided the basis for permissive intervention in *Voter Integrity Project v. Wake County Board of Election*. *See* Order, *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, Case No. 5:16-CV-683, ECF No. 26 (E.D.N.C. Dec. 1, 2016) (Ex. 4 to Mot. To Intervene, ECF No. 20-5).

Plaintiff contends Defendant-Intervenors cannot satisfy this prong because of a purported lack of "firsthand knowledge," citing to several paragraphs in Defendant-Intervenors' proposed Answer. This argument fails for two reasons. First, Rule 24 does not require "firsthand knowledge" (and indeed, Plaintiff cites no basis in law in support of this argument). Second, a glance at the corresponding paragraphs of the Complaint easily reveals why these allegations were denied for lack of knowledge: all of these paragraphs refer to an unspecified "analysis" that Plaintiff

---

court found governmental representation adequate because that court failed to recognize that "we look skeptically on government entities serving as adequate advocates for private parties").

14

performed, which it did not adequately describe, and thus Defendant-Intervenors could not independently verify. Those paragraphs of the Answer say nothing about the contributions Defendant-Intervenors would make to the informed resolution of the issues in this case, which, as explained in the Motion, would be substantial. The shortcomings in Plaintiff's argument are further revealed by Plaintiff's attempt to supplement its Complaint in the Popper Declaration by adding references to specific sources of information omitted in the Complaint, *see* Popper Decl. at ¶¶ 9-10 (Ex. 1 to Pl. Resp., ECF No. 28-1), and cannot lay a basis for denying intervention here.

Again, Plaintiff relies on the decision in *Logan* to contend that intervention should not be permitted here. But as noted above, this decision was later vacated, *see Judicial Watch*, 2019 U.S. App. LEXIS 8347, at *3, and it remains an outlier. *See, e.g.*, Order, *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, Case No. 5:16-CV-683 (E.D.N.C. Dec. 1, 2016) (Ex. 4 to Mot. To Intervene, ECF No. 20-5) (granting permissive intervention where proposed intervenors shared a common question of law of "whether Wake County BOE has made reasonable efforts to perform voter list maintenance under the NVRA"); *Kobach v. U.S. Election Ass. Comm'n*, Case No. 13-cv-4095, 2013 WL 6511874, at *13 (D. Kan. Dec. 12, 2013) (granting permissive intervention to League of Women Voters, among others, in NVRA matter after finding they had "clearly shown their interests in either increasing participation in the democratic process, or protecting voting rights, or both . . . ."); *Florida v. United States*, 820 F. Supp. 2d 85, 86-87 (D.D.C. 2011) (noting the court had granted permissive intervention on behalf of defendants in VRA matter to "organizations that have a special interest in the administration of Florida's election laws").

The only other case relied on by Plaintiffs, *North Carolina State Conference of the NAACP v. Cooper*, 332 F.R.D. 161 (M.D.N.C. 2019), was effectively overturned as the intervenors were later granted intervention by the Fourth Circuit when defendants appealed the court's preliminary

injunction. *See* Order, *N.C. State Conf. v. Raymond*, Case No. 20-1092 (4th Cir. Mar. 27, 2020) (granting motion by President Pro Tempore of the North Carolina Senate and the Speaker of the North Carolina House of Representatives to intervene) (Exhibit 1).

Finally, Defendant-Intervenors' participation in this case would cause no undue delay or prejudice as Plaintiff contends. As Plaintiff concedes, the Defendant-Intervenors' motion for intervention is timely. Pl. Resp. at 6 n.2. Plaintiff's unsubstantiated assertions as to the impact of Defendant-Intervenors' participation in discovery would apply to preclude any proposed intervenor in any matter and fail to show any particularized delay or prejudice in this case.[7] It also fails to account for the benefit of permitting intervention by organizations actively involved in ensuring eligible voters remain on voter rolls. *See* Order, *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, Case No. 5:16-CV-683, ECF. No. 26 at *5 (E.D.N.C. Dec. 1, 2016) (Ex. 4 to Mot. To Intervene, ECF No. 20-5) ("While Proposed Intervenor-Defendants' participation in the litigation as parties may impose some additional burdens on [Plaintiff], any prejudice it might suffer is outweighed by the benefit to the court from participation of Proposed Intervenor-Defendants' experienced counsel and from more extensive briefing on issues."); *Kobach*, 2013 U.S. LEXIS at *14 (noting the intervenors' "experience, views, and expertise . . . will help clarify, rather than clutter the issues of the action, which will in turn assist the Court in reaching its decision").

Plaintiff also tries to invoke the Defendant-Intervenors' intent to file a dispositive motion to its claims of undue delay. Pl. Resp. at 21. If anything, Defendant-Intervenors' expected

---

[7] Plaintiff's reliance on *Stuart* here again overlooks that the Fourth Circuit only found no abuse of discretion in the lower court's denial of permissive intervention after agreeing that the defendants were "zealously pursuing the *same* ultimate objectives" as the appellants. 706 F.3d 345, 355 (emphasis added). For the reasons discussed above in Section I, that is not the case here.

16

dispositive motion practice underscores that these organizations have a common question of law with the claims in the Complaint. Moreover, if the Defendants file their own dispositive motions, then Defendant-Intervenors' motion will cause no such undue delay at all; but if Defendant-Intervenors are alone in filing a dispositive motion, this would only show why intervention is required to protect their interests.

As for Plaintiff's complaints about counsel's statements, these are immaterial to the motion before the court. Plaintiff does not dispute that Defendant-Intervenors themselves are non-partisan entities that all seek to protect the right to vote for all eligible voters. Nicholas Decl. ¶ 3 (Ex. 2 to Mot. To Intervene, ECF No. 20-3); Montford Decl. ¶ 3 (Ex. 3 to Mot. To Intervene, ECF No. 20-4). The only group politicizing an important federal law designed to protect all voters is the Plaintiff, who has filed similar cases around the country in an effort to force quick settlements that force states to exceed what is required under the NVRA, *see, e.g.,* Settlement Agreement, *Judicial Watch Inc. v. Logan*, Case No. 2:17-cv-8948 (C.D. Cal. 2017) (Ex. 4 to Pl.'s Resp., ECF No. 28-4); Consent Judgment, *Judicial Watch v. Grimes*, 3:17-cv-94 (E.D. Ky. 2017) (ordered July 3, 2018) (Ex. 5 to Pl.'s Resp., ECF No. 28-5),[8] and who chose here to sue only two individual counties which lean heavily Democratic.[9] Defendant-Intervenors seek only to ensure a reading of the NVRA consistent with its intent and to ensure that the voters they have registered are not purged from the voter rolls.

---

[8] *See also* Jonathan Lai, *Civil rights groups seek to block Judicial Watch lawsuit and avoid a purge of Pennsylvania voter rolls*, Philadelphia Inquirer, https://www.inquirer.com/politics/election/pennsylvania-judicial-watch-voter-roll-civil-rights-groups-20200511.html (last updated: May 11, 2020).

[9] Guilford County and Mecklenburg County represent North Carolina's most urban, most non-white, and most-Democratic-affiliated populations according to voter registration statistics. *Voter Registration Statistics*, N.C. State Bd. of Elections, https://vt.ncsbe.gov/RegStat/ (last visited May 8, 2020).

Defendant-Intervenors agree that this case should not be about political theater; it should be about protecting eligible voters from flawed list maintenance procedures that threaten their ability to stay registered and to actually cast a ballot. If the North Carolina State Board is forced to abandon its current list maintenance system—a system that already exceeds what is required under the NVRA—and to carry out harsher, more error-prone, and potentially illegal measures, then there is the distinct possibility that eligible voters will be improperly culled from the voting rolls in North Carolina. Defendant-Intervenors should be granted permissive intervention to protect them.

## III.     Conclusion

For the reasons asserted above and in Defendant-Intervenors' initial Memo in Support of Intervention, the Court should grant Defendant-Intervenors' motion to intervene as of right or, in the alternative, for permissive intervention.

Dated: May 12, 2020.

Respectfully submitted,

*/s/ Hilary Harris Klein*

Chiraag Bains*
Dēmos
740 6th Street NW, 2nd Floor
Washington, DC 20001
(202) 864-2746
cbains@demos.org

Stuart Naifeh*
Emerson Gordon-Marvin*
Dēmos
80 Broad St, 4th Floor
New York, NY 10004
(212) 485-6055
snaifeh@demos.org
egordonmarvin@demos.org

*Pro hac vice application forthcoming*

Allison J. Riggs (State Bar #40028)
Jeffrey Loperfido (State Bar #52939)
Hilary Harris Klein (State Bar #53711)
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Facsimile: 919-323-3942
Email: Allison@southerncoalition.org
        jeff@southerncoalition.org
        hilaryhklein@southerncoalition.org

## CERTIFICATE OF SERVICE

I certify that on the 12th day of May, 2020 the foregoing Reply in Support of Defendant-Intervenors' Motion to Intervenor and Exhibit thereto was filed via the Court's CM/ECF filing system, which will send a notification of filing to all counsels of record as indicated in the attached Service List. Plaintiff's Counsel H. Christopher Coates has agreed to accept service by electronic mail and was served with the aforementioned documents via electronic mail as indicated in the attached Service List.


/s/ Hilary Harris Klein
Hilary Harris Klein

# SERVICE LIST

Eric W. Lee
Judicial Watch, Inc.
425 Third Street, SW, Suite 800
Washington, DC 20024
202-646-0008
Email: elee@judicialwatch.org
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

Robert D. Popper
Judicial Watch, Inc.
425 Third Street, SW, Suite 800
Washington, DC 20817
202-646-5173
Fax: 202-646-5199
Email: rpopper@judicialwatch.org
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

T. Russell Nobile
Judicial Watch Inc.
P.O. Box 6592
Gulfport, MS 39506
228-223-7820
Email: Rnobile@judicialwatch.org
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

H. Christopher Coates
934 Compass Point
Charleston, SC 29412
843-609-7080
Attorney for Plaintiff
*Served by electronic mail to*
*curriecoates@gmail.com*

Mark A. Jones
Bell, Davis & Pitt P.A.
100 North Cherry St., Ste 600
Winston-Salem, NC 27101
336-714-4122
Fax: 336-714-4101
Email: mjones@belldavispitt.com
*Attorney for Plaintiff*
*Served by CM/ECF Notification*

Olga Eugenia Vysotskaya de Brito
N.C. Department of Justice
114 W. Edenton Street
P.O. Box 629
Raleigh, NC 27602-0629
919-716-0185
Fax: 919-716-6759
Email: ovysotskaya@ncdoj.gov
*Attorney for Defendants State of North*
*Carolina, North Carolina State Board of*
*Elections, and Karen Brinson Bell*
*Served by CM/ECF Notification*

Paul M. Cox
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
919-716-6932
Fax: 919-716-6763
Email: pcox@ncdoj.gov
*Attorney for Defendants State of North*
*Carolina, North Carolina State Board of*
*Elections, and Karen Brinson Bell*
*Served by CM/ECF Notification*

G. Michael Barnhill
Womble Bond Dickinson (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202
704-331-4960
Fax: 704-338-7829
Email: Mike.Barnhill@wbd-us.com
*Attorney for Mecklenburg County Board of*
*Elections, Michael G. Dickerson, and Carol*
*Hill Williams*
*Served by CM/ECF Notification*

W. Clark Goodman
Womble Bond Dickinson (US) LLP
301 South College St.
3500 One Wachovia Center
Charlotte, NC 28202-6025
704-331-4981
Fax: 704-338-7808
Email: Clark.Goodman@wbd-us.com
*Attorney for Mecklenburg County Board of Elections, Michael G. Dickerson, and Carol Hill Williams*
*Served by CM/ECF Notification*

John Mark Payne
Guilford County Attorney's Office
301 West Market Street
PO Box 3427
Greensboro, NC 27402
(336) 641-3686
Fax: (336) 641-3642
Email: mpayne@guilfordcountync.gov
*Attorney for Defendants Guilford County Board of Elections, Charlie Collicutt, and Horace Kimel, Jr.*
*Served by CM/ECF Notification*

Taniya Donyale Reaves
Guilford County Attorney's Office
301 West Market Street
Post Office Box 3427
Green, NC 27402
336-641-4911
Fax: 336-641-3642
Email: treaves@guilfordcountync.gov
*Attorney for Defendants Guilford County Board of Elections, Charlie Collicutt, and Horace Kimel, Jr.*
*Served by CM/ECF Notification*

Patrick G. Spaugh
Womble Bond Dickinson (US) LLP
301 South College Street
Suite 3500
Charlotte, NC 28202
704-331-4962
Email: Patrick.Spaugh@wbd-us.com
*Attorney for Mecklenburg County Board of Elections, Michael G. Dickerson, and Carol Hill Williams*
*Served by CM/ECF Notification*

22