UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No. 3:20-cv-211

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| Plaintiff, | ) |
| v. | ) **REPLY IN SUPPORT OF** |
| | ) **DEFENDANTS' MOTIONS** |
| | ) **TO DISMISS** |
| NORTH CAROLINA, et al., | ) |
| Defendants. | ) |

All Defendants file this reply in support of their Motions to Dismiss, pursuant to Rules 12(b)(1), (2), (5), and (6) of the Federal Rules of Civil Procedure.

The Complaint suffers from multiple deficiencies—improper service, naming immune State officials, failing to provide adequate presuit notice, and failure to allege a claim for relief under Count I. Plaintiff's responses to these deficiencies cannot rescue the Complaint. It should be dismissed.

## I. PLAINTIFF DOES NOT DISPUTE IMPROPER SERVICE.

Plaintiff makes no argument that its attempt to serve Defendants was authorized under the Rules. *See* Doc. 51 at 33. Instead, Plaintiff seeks the Court's leave to allow a redo of service outside the 90-day time limit for service under Rule 4(m). *See id.* (incorporating Plaintiffs' argument in Doc. 42). For the reasons explained in Defendants' brief supporting dismissal and in their opposition to Plaintiff's motion to serve out of time, Doc. 38-1 at 11, Doc. 46 at 2–6, the Complaint should be dismissed for improper service.

A dismissal for improper service is especially appropriate here, given the Plaintiff's insufficient notice of alleged NVRA violations on the Defendants before this lawsuit was filed, as discussed further below, *infra* pp. 4–10. Such a dismissal, without prejudice, would afford Plaintiff an opportunity to *properly* explain to the Defendant boards exactly how the State's voter

list maintenance procedures are unlawful and why Defendants' production of voter records are deficient. The interests of justice would be served if the parties could have an informed discussion outside of litigation about the elections boards' procedures and what the NVRA requires. That is, after all, is the purpose of the prelitigation notice requirement of the NVRA. *See Ass'n of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997).

## II. THE NVRA DOES NOT ABROGATE THE STATE'S IMMUNITY.

In response to the State Defendants' immunity argument, Plaintiff offers *no case* that has held that the NVRA abrogated the Eleventh Amendment immunity of the States. Doc. 51 at 27–33.[1] Addressing Defendants' cases that have all resolved the question in favor of State immunity, Plaintiff contends that these cases were either "wrongly decided" or have "dubious value" because one of these cases involved a pro se litigant. *Id.* at 29–30. To the contrary, the two federal district courts and the Fourth Circuit decided this issue correctly. *See Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015) (unpublished), *aff'g Krieger v. Loudon Cty.*, No. 5:13-CV-073, 2014 WL 4923904, at *3 (W.D. Va. Sept. 30, 2014); *Pub. Interest Legal Found., Inc. v. Bell*, No. 5:19-CV-248-BO, 2019 WL 5290920, at *2 (E.D.N.C. Oct. 17, 2019).

The Supreme Court has instructed that State immunity cannot be abrogated unless Congress includes "unequivocal statutory language" allowing for suits against the States in the law that is the basis of the lawsuit. *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020) (quoting *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 56 (1996)).

Plaintiff misconstrues Defendants' argument about this "clear statement" rule, as

---

[1] Plaintiff cites *United States v. Louisiana*, 196 F. Supp. 3d 612 (M.D. La. 2016), *vacated by United States v. Louisiana*, No. 3:11-CV-470-JWD-RLB, 2017 WL 4118968 (M.D. La. Aug. 21, 2017). This is not an Eleventh Amendment abrogation decision. There, the court held that the Eleventh Amendment does not apply to suits brought by the United States, as opposed to a private party. *Id.* at 658 ("As written and construed, [the Eleventh Amendment] does not bar suits brought by the United States itself."). That issue has no bearing on this case.

somehow suggesting a "superficial syntax locality requirement." Doc. 51 at 29. By arguing that a clear statement must appear in the statute's remedial language, Defendants are not suggesting that only one particular section of a federal statute may contain valid abrogation of immunity. Instead, Defendants are highlighting the Supreme Court's explicit instruction that the statute at issue must "speak to what parties are subject to suit" to satisfy the clear statement rule. *Dellmuth v. Muth*, 491 U.S. 223, 231 (1989).

In other words, if a statute merely authorizes a private right of action without explicitly permitting such an action to be brought against the States, such a statute does not *unequivocally* show that Congress intended to breach the States' sovereign immunity. *See id.* ("A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985))). This rule of law has been applied repeatedly by the Supreme Court. *E.g.*, *Sossamon v. Texas*, 563 U.S. 277, 287 (2011) (citing *Dellmuth* for the holding that "a permissible inference" that States could be sued is not the necessary "unequivocal declaration" required for abrogation); *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541 (2002); *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 786 (1991).

That is precisely the situation here. The NVRA authorizes a private right of action, 52 U.S.C. § 20510(b)(2), but nowhere does it authorize a private suit against a sovereign State. Plaintiff points to 52 U.S.C. § 20510(b), Doc. 51 at 31, which is a general authorization for a private right of action that does *not* mention suits against a State. In fact, this provision directs potential plaintiffs to provide presuit notice "to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). Accordingly, where the statute "speak[s] to what parties are subject to suit," *Dellmuth*, 491 U.S. at 231, it speaks to only the chief election official, not the sovereign

3

Case 3:20-cv-00211-RJC-DCK   Document 54   Filed 10/07/20   Page 3 of 19

State. The best reading of this provision is that Congress enacted the NVRA in harmony with the Eleventh Amendment's prohibition on private parties suing a State, while recognizing the exception to immunity for suits against state officials for prospective injunctive relief—the so-called *Ex parte Young* exception. *See Seminole Tribe*, 517 U.S. at 73.[2]

Accordingly, the Fourth Circuit and district court cases that directly addressed this issue correctly applied binding Supreme Court precedent, and the claims against the State and the State Board should be dismissed.

### III. PLAINTIFF'S PRESUIT NOTICES WERE FATALLY DEFICIENT.

None of Plaintiff's presuit notices were sufficient to confer standing—not for the "reasonable effort" claim (Count I), nor for the records claim (Count II).

As an initial matter, contrary to Plaintiff's argument (Doc. 51 at 24 n.9), in the Fourth Circuit, the issue of statutory standing, as that issue pertains to presuit prerequisites, is treated as jurisdictional and is properly considered under a Rule 12(b)(1) motion. *Mardirossian v. Paul Revere Life Ins. Co.*, 286 F.3d 733, 735 (4th Cir. 2002). Accordingly, materials outside the pleadings, such as correspondence among the parties, may be considered under this Motion. *See Shipley v. U.S. Postal Serv.*, 286 F. Supp. 2d 657, 661 (M.D.N.C. 2003) (relying on letters exchanged between the parties to determine presuit requirements were not satisfied under the Federal Tort Claims Act). The contrary case that Plaintiff cites concerns a different type of statutory standing inquiry—whether the plaintiff falls within the "class" of persons that the statute is designed to accord the right to sue. *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). Unlike the inquiry into presuit prerequisites, the "class" inquiry

---

[2] Consistent with this reading of the NVRA's remedial provision, Plaintiff has also named the State's chief elections official, Karen Brinson Bell, as a defendant. The State Defendants are not asserting immunity with respect to Defendant Bell, consistent with the *Ex parte Young* rule.

is a simple matter of statutory construction, such that reference to materials outside the pleadings is not necessary. *See id.*

In response to Defendants' argument regarding Plaintiff's notices of an alleged violation of the NVRA's "reasonable effort" provision, Plaintiff points to nothing in its letters to the Defendants identifying *how* the Defendants are violating this provision. Instead, Plaintiff merely cites to the voter registration statistics included in its notice letters that allegedly provide "evidence" of a lack of reasonable effort. Doc. 51 at 25. But what, exactly, the elections boards are doing wrong is left to the imagination. This fails to provide the boards "an opportunity to attempt compliance before facing litigation," *Miller*, 129 F.3d at 838, because Plaintiff doesn't identify any deficient procedures, despite having full knowledge of what the State's list maintenance procedures are, *see* Doc. 38-5 at 2.

As Defendants explained in their opening brief, Doc. 38-1 at 14–15, the reason that the statistics in Plaintiff's letters, in particular, cannot help an elections board identify any "reasonable effort" deficiency is because these statistics are consistent with compliance with the NVRA. Various provisions of the NVRA itself operate to ensure that significant numbers of likely ineligible voters remain on the rolls at any particular time, especially at the time of a general election, when the registration statistics at issue were reported, *see Bellitto v. Snipes*, 935 F.3d 1192, 1208 (11th Cir. 2019) (explaining how EAVS figures are from the "book-closing date" and are inflated). These provisions include: (1) a mandated four-year delay, at a minimum, for the removal of voters who have moved and have not so informed the elections board, 52

5

U.S.C. § 20507(d)[3]; (2) 90-day blackout periods before federal primaries and general elections in which States may not conduct removal efforts, *id.* § 20507(c)(2)(A), and (3) various provisions that make it much easier to add voters to the rolls than to remove them, *id.* §§ 20503–06. Even the NVRA's "safe harbor" provision—whereby U.S. postal records are used to identify people who have moved—fails to reach 40% of such voters. *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1840 (2018). And Plaintiff's calculations suffer from numerous well-documented flaws that inflate the ratio of voters to population. *See* Doc. 38-1 at 15–16.[4]

Allegations of NVRA violations that are "too vague" to inform an elections agency about

---

[3] Plaintiff incorrectly states that this delay may be as short as two years and a few months. Doc. 51 at 5 n.3. North Carolina conducts its address-confirmation mailings pursuant to this provision of the NVRA at the beginning of each odd-numbered year. N.C. Gen. Stat. §§ 163-82.14(a), (d)(2). A voter who fails to respond to such a notification and does not vote cannot be removed, per the NVRA, until after the second general election following that notice, which occurs nearly four years after the notification. For example, if a confirmation mailing goes out in January 2021, the voter cannot be removed until after the November 2024 general election. Of course, no confirmation mailing would go to those who voted in November 2020 and therefore "confirmed" their addresses with the elections board, *id.* § 163-82.14(d); consequently, the delay is, in practice, at least four years for typical removals under 52 U.S.C. § 20507(d). Defendants are aware of no decision that has found that a state's discretionary decision to schedule its address-confirmation mailings in this way violates the NVRA.

[4] Plaintiff faults (at Doc. 51 at 2, 19) Defendants' citation to population growth statistics for Mecklenburg and Guilford Counties, which demonstrate that Plaintiff's voter registration rate calculations are inflated, because Plaintiff compares current voter registration numbers to outdated population figures (*i.e.*, the denominator is artificially low). *See* Doc. 38-1 at 15. These growth statistics are public records that appear on the website of the State Demographer, an office within the North Carolina Office of State Budget and Management. State law designates these official "certified" population estimates for use in carrying out myriad legislative and administrative responsibilities. *See* N.C. Gen. Stat. §§ 58-36-10(3), 58-40-25(4), 105-113.82(e), 105-164.44F(b), 105-164.44I(g), 105-187.19(b), 105-187.24, 105-286(a)(2), 105-469(a)(1), 105-486(a), 136-41.1(a), 136-189.11(d)(2), 136-202(c), 143-166.82(a1), 143B-437.08(d), 153A-274.1(e), 160A-486, 162A-6(14d). Plaintiff does not challenge the accuracy or authenticity of these population statistics. The court may properly take judicial notice of the State Demographer's figures. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 676 n.6 (9th Cir. 2017) (en banc); *Aleut League v. Atomic Energy Comm'n*, 337 F. Supp. 534, 538 (D. Alaska 1971).

how to comply are insufficient to satisfy the presuit notice provision of the NVRA. *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014). Plaintiff's letters are not merely vague on identifying any NVRA violation, they fail to identify anything that the boards are doing that violates the NVRA's reasonable effort provision. *See id.* (rejecting similar citations to statistics that failed to alert the officials to what practices were unlawful).

Plaintiff responds by arguing, in essence, that because the NVRA's "reasonable effort" standard is itself vague, a presuit notice about a "reasonable effort" violation can also be vague, unlike a notice given for violations of more prescriptive requirements in the Act. *See* Doc. 51 at 24–25 & n.10. Even if the "reasonable effort" requirement is less specific than other requirements in the NVRA, in order for the presuit notice to have any practical meaning, a defendant must be able to discern what it is supposed to do to come into compliance. *See Scott*, 771 F.3d at 836. By including the presuit notice requirement in the NVRA, Congress surely did not intend for the notice to operate as a meaningless box to check before a plaintiff could hale elections officials into court for this, or any other type of NVRA claim.

Plaintiff cites to *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012), and *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779 (W.D. Tex. 2015). While the notices at issue in these cases may have involved a similar dearth of information about how the defendant was allegedly violating the NVRA, those decisions cannot be squared with the appellate decisions requiring specific violations to be identified in a notice such that an elections board may attempt to correct any problems before facing a lawsuit. *See Scott*, 771 F.3d at 836;

7

*Miller*, 129 F.3d at 838.[5]  In Plaintiff's cited cases, the defendants also failed to explain to those courts why the voter registration statistics cited by the plaintiffs are consistent with NVRA compliance.  *See Martinez-Rivera*, 166 F. Supp. 3d at 795; *King*, 993 F. Supp. 2d at 922 & n.2.  Those courts also did not have the benefit of the Eleventh Circuit's extensive analysis in *Bellitto v. Snipes*, showing that these same statistics do not show an NVRA violation.  *See* 935 F.3d at 1208.  For these many reasons, Plaintiff's cited decisions were wrongly decided.

Plaintiff's complaint also demonstrates that Plaintiff was entirely capable of identifying in its presuit notice how the Defendant boards were allegedly violating the NVRA.  The complaint alleges that the boards, pursuant to State policy, are waiting longer than they should before sending an inactive voter an address-confirmation notice, thereby resulting in a "delay in the removal of inactive voter registrations."  Doc. 1 at ¶ 58.  This is precisely the type of specific allegation of a violation that would permit an elections board to attempt compliance by considering a change in its practices (assuming the current practice was an NVRA violation, of course).[6]  But the notice letters did not raise this allegation, or any other suggestion of *how* the Defendant boards were violating the NVRA's "reasonable effort" provision.  Accordingly, the notices to the Defendants were insufficient to confer standing to assert Count I.

In response to Defendants' argument that no notice at all was given with respect to alleged NVRA violations outside of Mecklenburg and Guilford Counties, Plaintiff suggests that

---

[5]   In *King*, the plaintiff also notified the state that it had failed to continue specific "efforts to clean its voter rolls," which were required by an earlier consent decree with the United States.  993 F. Supp. 2d at 921.  This shows that the state was made aware of specific practices that the plaintiff complained were discontinued, allegedly in violation of the NVRA.

[6]   For the reasons explained below, *infra* pp. 15–18, this practice does not violate the NVRA and Plaintiff's legal theory for how it violates the NVRA would invite this Court to exceed its jurisdiction.

8

this is an issue that the Court should defer considering until the remedy stage, if liability is established. Doc. 51 at 26 n.11. This ignores the Supreme Court's command that "a plaintiff must demonstrate standing for each claim he seeks to press *and for each form of relief* that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (emphasis added). Plaintiff's claims for relief against the State Defendants regarding practices occurring outside of Mecklenburg and Guilford Counties should therefore be dismissed.

Finally, with respect to the lack of notice regarding a failure to provide documents, Plaintiff makes no attempt to argue that a notice of violation occurred, but instead relies on the suggestion in the original request for records that failure to comply with the records request "would be deemed" a violation in the future. Doc. 51 at 26. The plain language of the NVRA does not envision prophylactic notice of violations. 52 U.S.C. § 20510(b)(1) ("A person who *is aggrieved* by a violation of this chapter may provide written notice of *the violation* . . . ." (emphasis added)). For this reason, one court has explained that presuit notice of a records-production failure is proper where "the plaintiff's request and the defendant's response *preceded* the notice letter." *Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1335 (S.D. Fla. 2017) (emphasis in original); *see id.* n.5. Plaintiff's notice of a potential future violation was therefore insufficient.

Plaintiff's response brief further explains why this notice requirement is important. The records requested included various sets of records, many of which the State Board had responded to before the litigation. *See* Docs. 38-5, 38-6. Only by filing this lawsuit has Plaintiff identified the *one* aspect of their multipart records request as the one that Plaintiff deemed important enough to sue over. *See* Doc. 51 at 27. In the original request for records, all documents were requested "[p]ursuant to Section 8(i)" of the NVRA—no distinction was made among the requests. Doc. 38-4 at 2. If Plaintiff had provided the required notice of deficiency with regard

9

to the particular aspect of its records request that is the basis of Count II, the State Board could have prioritized that request over the others that took time and effort to respond to, and could have thereby avoided litigation. So contrary to Plaintiff's argument, such notice would not have been "a pointless procedure." Doc. 51 at 26.

## IV. THE COMPLAINT ALLEGES NO PLAUSIBLE VIOLATION OF THE REASONABLE EFFORT PROVISION OF THE NVRA.

Due to the foregoing deficiencies in the Complaint, the Court need not reach the merits of this case. To the extent the Court does reach the merits, however, the Complaint fails to state a plausible violation of the "reasonable effort" provision of the NVRA and should be dismissed with prejudice. Plaintiff's defenses of their claims do not rescue their Complaint.

### A. The Pleadings Establish Compliance with the Safe Harbor Provision.

The NVRA "does not define what a 'reasonable effort' entails," *Belitto*, 935 F.3d at 1205, thereby reserving for states "substantial discretion" in crafting their list-maintenance programs, *Common Cause v. Brehm*, 432 F. Supp. 3d 285, 313 (S.D.N.Y. 2020). *Accord* Judicial Watch Amicus Br. at 4, 6, 8, 9, *Husted v. A. Philip Randolph Inst.*, No. 16-980 (Aug. 7, 2017), *available at* https://bit.ly/3hlOOdj. A state need only "make a reasonable effort, not an exhaustive one," and need not use "every conceivable mechanism" for that effort to be reasonable. *Bellitto*, 935 F.3d at 1207. Moreover, the NVRA includes a "safe harbor" provision by which a state may satisfy the "reasonable effort" requirement—by carrying out a regular program of confirming the address of voters who have submitted information to the Postal Service indicating that they have moved out of the voting jurisdiction (*i.e.*, the National Change of Address program, or NCOA). *Id.* at 1203–04.

The State's list maintenance policy, which is incorporated into the Complaint, establishes that North Carolina carries out the NCOA safe harbor process. *See* Doc. 38-3 at 12–18

10

(incorporated by Doc. 1 at ¶ 58). This process comports with the safe harbor provisions of the NVRA. *See* 52 U.S.C. §§ 20507(c)(1)(B)(ii), (d)(2). And as the Supreme Court has indicated, this process fails to identify approximately 40% of the people who move out of a voting jurisdiction, *Husted*, 138 S. Ct. at 1840, meaning that having inflated voter rolls, as Plaintiff alleges, is consistent with the implementation of the safe harbor program. The pleadings therefore establish compliance with the NVRA, as a matter of law, and Plaintiff's allegations regarding registration statistics are not to the contrary.

Plaintiff responds by arguing that the Complaint doesn't actually incorporate the list maintenance policy, and it should therefore not be considered. Doc. 51 at 21. However, paragraph 58 of the Complaint makes the existence and content of this document "central" to Plaintiff's claims. *Mode v. S-L Distribution Co.*, No. 3:18-cv-150, 2019 WL 1057045, at *4 n.4 (W.D.N.C. Mar. 6, 2019). It states, in part, "[t]he practice adopted by the State Board, which is reflected in a list maintenance manual it published and posted on its website . . . causes a needless delay in the removal of inactive voter registrations." Doc. 1 at ¶ 58. Moreover, the only legal theory advanced in Plaintiff's brief for how the Defendants are violating the reasonable effort provision of the NVRA is that, by carrying out this same State policy, the Defendants are violating a state statute. *See* Doc. 51 at 21–23. The State's list maintenance policy is clearly incorporated into the Complaint.

Plaintiff argues, alternatively, that just because the State has a policy that requires the use of the NCOA process does not mean the State actually implements it. Doc. 51 at 20. This is an improper attempt to revise the Complaint. The Complaint relies on an allegation that the State carries out the list maintenance policy *as written*. *See* Doc. 1 at ¶ 58 (alleging that this policy "causes a needless delay in the removal of inactive voter registrations"). There is no allegation

in the Complaint that the State or county boards are failing to carry out the very policy that the Complaint assumes is being carried out. Plaintiff cannot revise its Complaint through its response brief. *See United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017); *White v. Chase Bank USA, N.A.*, No. 5:16-CV-00176-BR, 2017 WL 1131898, at *3 n.1 (E.D.N.C. Mar. 24, 2017). But that is what Plaintiff is seeking to do in its response. Doc. 51 at 21 (asserting, for the first time, "Defendants have *not* fully implemented a 'safe-harbor' program."). The pleadings therefore establish compliance with the NVRA's "reasonable effort" provision.

### B. The Alleged Registration Statistics Do Not Rescue the Complaint.

As noted above, Plaintiff's discussion of voter registration statistics cannot negate the compliance with the safe harbor provision; and indeed, the case law establishes that such statistics are consistent with compliance. *See Husted*, 138 S. Ct. at 1840; *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 192 (2008) (holding the NVRA itself is "partly responsible for inflated lists of registered voters").

Plaintiff also contends that other district courts have permitted claims to proceed past the pleadings with similar allegations about voter registration and removal statistics. Doc. 51 at 15–17. As explained above, *Martinez-Rivera* was wrongly decided and did not understand the misleading nature of the statistics presented, as established later by the Eleventh Circuit in *Bellitto*. *Supra* pp. 7–8. Defendants' opening brief similarly explains the problems with relying on the outdated analysis of *Voter Integrity Project*. Doc. 38-1 at 20–21.

Plaintiff faults Defendants for relying on the Eleventh Circuit's analysis of whether statistics similar to those cited by Plaintiff show an NVRA violation. *See* Doc. 51 at 16–18. The Eleventh Circuit affirmed a district court's conclusion that they did not. *Bellitto*, 935 F.3d at

1208. While it is true that the court was applying clear error review to these factual findings, the persuasive value of the *Bellitto* case cannot be ignored. After the same statistical evidence as alleged by Plaintiff was presented to another district court, that court concluded that this data was misleading and did not show an NVRA violation, and the Eleventh Circuit affirmed that conclusion. The purpose of a Rule 12(b)(6) motion is to ferret out claims that would be a waste of the parties' and the court's resources. *See Francis v. Giacomelli*, 588 F.3d 186, 193 & n.2 (4th Cir. 2009) (discussing the *Twombly* and *Iqbal* decisions as reflecting the Supreme Court's concern with "strike suits"). Where there are cases that have persuasively demonstrated that the same legal claims based on similar facts were unsuccessful, even in a distinct procedural posture, such cases are important to consider when determining whether the allegations cross the line from conceivable to plausible. *See, e.g.*, *Grimes v. Gov't Employees Ins. Co.*, No. 1:18-CV-798, 2019 WL 3425227, at *9 (M.D.N.C. July 30, 2019) (dismissing complaint where a Virginia court had granted summary judgment in a case presenting "a similar factual scenario" as that alleged in the plaintiff's complaint).

Whether or not the Court follows the Eleventh Circuit's analysis in *Bellitto*, Defendants have shown that the statistical allegations in the Complaint are entirely compatible with lawful list maintenance activity, for multiple reasons:

> (1) The NVRA's numerous provisions encouraging voter registration and restricting the removal of voters ensure that there are "inflated lists of registered voters." *Crawford*, 553 U.S. at 192; *see* Doc. 38-1 at 14–15.
>
> (2) Plaintiff's registration figures are drawn at the height of the registration lists' inflation—during the blackout period when removal programs must cease for 90 days. Doc. 38-1 at 15–16.

13

(3) The federal data source Plaintiff uses to determine registration and removal figures specifically warns against using those figures to draw any conclusions about NVRA compliance. *Id.* at 14–15, 25 (discussing the 2018 EAVS report).

(4) Because the NVRA permits the states to decide when (if ever) to send address-confirmation mailing when a voter has lost contact, Doc. 38-1 at 21–23, it is entirely lawful for there to be voters on the rolls who have not voted in three or four election cycles, despite the Complaint's allegations to the contrary, Doc. 1 at ¶¶ 42–44, 55–58. North Carolina, like many other states, has exercised this discretion to wait until such a voter has lost contact for two election cycles before sending a confirmation notice, and the NVRA then requires the State to wait two additional cycles of non-contact before the voter can be removed, thereby resulting in voters appearing on the rolls and not having voted for three or four cycles. Doc. 38-1 at 21–23.

Plaintiff contends that Defendants are disputing the facts as alleged in the Complaint by addressing the statistics and calculations contained in the Complaint. Doc. 51 at 2, 19. Plaintiff misconstrues the argument. Even if the calculations and figures are assumed to be true, the legal significance of those figures is a matter appropriately resolved on a motion to dismiss. As shown above, various authorities that this Court may rely on—including case law, the language of the NVRA and the pertinent state statutes and policy, and the very federal source for Plaintiff's data—all show that the figures in the Complaint do not show a plausible violation of the NVRA's reasonable effort requirement. These figures are consistent with statutory compliance.

Ultimately, taking into consideration the limitations of the statistics offered in the Complaint, Plaintiff's argument fails to properly apply Rule 12(b)(6):

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

> unlawfully. Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Here, because the statistics offered are consistent with lawful list maintenance practices, the Complaint fails to cross the threshold between possible and plausible. *Id.* at 680 (holding that a claim for unlawful action was implausible where allegations were "not only compatible with, but indeed was more likely explained by, lawful . . . behavior").

### C. Plaintiff's Theory Relying on the Interpretation of North Carolina Law Must Be Rejected.

Finally, Plaintiff's Complaint and the response brief fail to present a cognizable legal theory, which is an independent basis for dismissal of the claim under Rule 12(b)(6). *See Darling v. Falls*, 236 F. Supp. 3d 914, 920 (M.D.N.C. 2017) ("Dismissal under Rule 12(b)(6) is appropriate only when the complaint 'lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" (quoting *Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 300 (M.D.N.C. 2015))).

The single legal theory advanced in Plaintiff's response brief is that North Carolina is violating the "reasonable effort" provision of the NVRA by misinterpreting a state law concerning when to send voters address-confirmation notices. Doc. 51 at 12, 21–23. This argument is flawed for many reasons.

First, as a threshold matter, this legal theory invites this Court to exceed its jurisdiction. Where a challenge to a state official's action is made on the basis of state law, sovereign immunity bars a federal court from granting relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124–25 (1984) ("[T]he federal courts lack[ ] jurisdiction to enjoin . . . state officials on the basis of . . . state law."). "[S]overeign immunity . . . bars a court's grant of any type of

15

Case 3:20-cv-00211-RJC-DCK   Document 54   Filed 10/07/20   Page 15 of 19

relief . . . based upon a State official's violation of State law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001). Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

Second, the theory of a federal law violation premised on the alleged misapplication of a state statute is untenable. Plaintiff's argument is that "Defendants' program cannot be deemed 'reasonable' if it fails to comply with its own State list maintenance laws implementing Section 8 of the NVRA." Doc. 51 at 12. This would mean that the NVRA's reasonable effort provision requires something different in each state, depending on each state's particular decisions about how to conduct voter list maintenance. The NVRA grants considerable discretion to states in formulating their list maintenance activities, *see Husted*, 138 S. Ct. at 1839, but where it imposes any mandates regulating those activities, those mandates are uniform across state lines. *Cf. Ass'n of Cmty. Organizations for Reform Now v. Miller*, 912 F. Supp. 976, 984 (W.D. Mich. 1995) (noting that the requirements imposed by the NVRA are not dependent on state legislative action). If a federal statute were to incorporate state law into its substantive provisions, the Supreme Court requires such an incorporation to be explicit. *See United States v. Turley*, 352 U.S. 407, 411 (1957) ("We agree that in the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law."); *Chesapeake & O. Ry. Co. v. Stapleton*, 279 U.S. 587, 597 (1929) (rejecting attempt to covert a state labor law violation into a federal claim, which would result in the "enlargement" of liability under the federal statute). The NVRA does no such thing, and Plaintiff cites no decision that has ever adopted this novel theory of an NVRA violation.

16
Case 3:20-cv-00211-RJC-DCK   Document 54   Filed 10/07/20   Page 16 of 19

To the contrary, Plaintiff is on record before the U.S. Supreme Court supporting Defendants' position, that "the NVRA says nothing about the kinds of events that states may rely on as grounds for sending confirmation notices to those who are believed to have moved. . . . There is simply no basis for reading any other requirements into the statute." Judicial Watch Amicus Br., *supra*, at 8. The Supreme Court agreed: "[N]o provision of federal law specifies the circumstances under which a return card may be sent." *Husted*, 138 S. Ct. at 1839. Plaintiff's opposite position now, which seeks to bootstrap an alleged violation of state law onto a federal law claim, is contrary to binding precedent.

Third, even if Plaintiff's interpretation of state law were relevant to the NVRA, it is nonetheless wrong.[7] Section 163-82.14(d) of the North Carolina General Statutes requires the county boards to send an address-confirmation mailing to "every registrant after every congressional election if the county board has not confirmed the registrant's address by another means." The statute does not identify what constitutes "confirm[ation]" of voter's address "by another means," nor does it prescribe how recent in time before the mailing such confirmation must occur. Accordingly, the State Board, in exercising its supervisory authority over elections and voter registration, *see id.* §§ 163-22(a), -82.2, has interpreted this provision to mean that a voter confirms his or her address by having had official contact with the county board at some point during the prior two statewide elections, or any time in between. Doc. 38-3 at 5. This translates into a no-contact period spanning approximately two years and three months. *See id.*

The foregoing interpretation of state law by the state agency charged with its

---

[7]   The assertion in paragraph 58 of the Complaint that the State's list maintenance policy is "contrary to North Carolina law" is a legal conclusion, which is *not* presumed to be true on a motion to dismiss. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) ("We do not, however, accept as true a legal conclusion couched as a factual allegation." (citation omitted)).

implementation is entirely reasonable and is accorded deference under North Carolina law. *Newsome v. N.C. State Bd. of Elections*, 105 N.C. App. 499, 506–07, 415 S.E.2d 201, 205 (1992) ("[T]he interpretation of a statute given by the regulatory agency involved, here the State Board of Elections, should be accorded considerable weight."). It ensures that voters who may only vote in every other general election (*i.e.*, presidential-year voters) are not initiated into the registration-cancellation process by simply failing to vote, which would appear to contradict the NVRA itself. *See* 52 U.S.C. § 20507(b)(2) (no removal "by reason of the person's failure to vote"). This interpretation is also consistent with the advice offered by the relevant federal authorities on compliance with the NVRA and other federal voting laws. Fed. Election Comm'n, Implementing the National Voter Registration Act of 1993 at 5-23 (Jan. 1, 1994), https://bit.ly/31w4ZA0. Tellingly, Plaintiff presents no authority—state or federal—suggesting that the State Board's interpretation of N.C. Gen. Stat. 163-82.14(d) is incorrect.

In sum, Plaintiff's legal theory is premised on an issue of state law that is both beyond this Court's jurisdiction and is irrelevant to the interpretation of the federal claim raised in this case. Even if the Court were to consider it, Plaintiff's interpretation of North Carolina law is wrong. The Complaint is therefore devoid of any plausible legal theory to support Count I.

## CONCLUSION

Defendants respectfully request that Plaintiff's Complaint be dismissed.

This the 7th day of October, 2020.

JOSHUA H. STEIN
Attorney General

/s/ Paul M. Cox
N.C. State Bar No. 49146
Olga E. Vysotskaya de Brito
N.C. State Bar No. 31846
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6920
Email: pcox@ncdoj.gov
      ovysotskaya.ncdoj.gov

*Counsel for State Defendants*


OFFICE OF GUILFORD COUNTY ATTORNEY

/s/ J. Mark Payne
J. Mark Payne
N.C. Bar No. 11046
Taniya D. Reaves
N.C. Bar No. 51791
Office of Guilford County Attorney
301 W. Market Street
PO Box 3427 (27402)
Greensboro, N.C. 27401
P. 336-641-3852
F. 336-641-3642
Email: mpayne@guilfordcountync.gov
      treaves@guilfordcountync.gov

*Counsel for Guilford County Defendants*

WOMBLE BOND DICKINSON (US) LLP

/s/ G. Michael Barnhill
G. Michael Barnhill (N.C. Bar No. 9690)
W. Clark Goodman (N.C. Bar No. 15533)
Patrick G. Spaugh (N.C. Bar No. 49532)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202
Telephone: (704) 331-4900
Email: mike.barnhill@wbd-us.com
Email: clark.goodman@wbd-us.com
Email: patrick.spaugh@wbd-us.com

*Counsel for Mecklenburg County Defendants*