**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO.  3:20-CV-211-RJC-DCK**

| | |
|---|---|
| **JUDICIAL WATCH, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| **STATE OF NORTH CAROLINA,  NORTH** ) | |
| **CAROLINA STATE BOARD OF ELECTIONS,** ) | |
| **KAREN BRINSON BELL,  MECKLENBURG** ) | |
| **COUNTY BOARD OF ELECTIONS,  CHARLIE** ) | |
| **COLLICUTT,  MICHAEL G. DICKERSON,** ) | |
| **HORACE KIMEL, JR.,  CAROL HILL** ) | |
| **WILLIAMS, and  GUILFORD COUNTY BOARD** ) | |
| **OF ELECTIONS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "The League Of Women Voters Of North Carolina And The North Carolina A. Philip Randolph's Motion To Intervene As Defendants" (Document No. 19);  the "The State And Guilford County Defendants' Motion To Dismiss" (Document No. 38);  "The Mecklenburg County Board Of Elections, Michael G. Dickerson, And Carol Hill Williams' Motion To Dismiss" (Document No. 39);  "Proposed Defendant-Intervenors' Motion For Expedited Consideration Of Their Motion To Intervene" (Document No. 41);  and Plaintiff's "Motion To Extend Time To Serve Complaint" (Document No. 42).

These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are ripe for disposition.  Having carefully considered the arguments, the

record, and applicable authority, the undersigned will respectfully recommend that the motions be granted in part and denied in part.

## I. BACKGROUND

Judicial Watch, Inc. ("Plaintiff" or "Judicial Watch") initiated this action with the filing of its "Complaint" (Document No. 1) on April 9, 2020. Plaintiff "is a not-for-profit, educational organization" with a mission "to promote transparency, integrity, and accountability in government and fidelity to the rule of law." (Document No. 1, pp. 2, 6).

Plaintiff seeks declaratory and injunctive relief against the State of North Carolina (the "State"); the North Carolina State Board of Elections ("State Board"); Karen Brinson Bell ("Bell") (together the "State Defendants"), in her capacity as the Executive Director of the State Board of Elections; the Mecklenburg County Board of Elections ("Mecklenburg Board"); Michael G. Dickerson ("Dickerson"), in his capacity as the Director of Elections for Mecklenburg County; Carol Hill Williams ("Williams") (together the Mecklenburg Defendants), in her capacity as Chair of the Mecklenburg County Board of Elections; the Guilford County Board of Elections ("Guilford Board"); Charlie Collicutt ("Collicutt"), in his official capacity as Director of Elections for Guilford County; and Horace Kimel, Jr., ("Kimel") (together the "Guilford Defendants") in his capacity as Chair of the Guilford County Board of Elections (all together "Defendants").[1] (Document No. 1, pp. 1-2). By bringing this action,

> Plaintiff seeks . . . to compel the State of North Carolina, the North Carolina State Board of Elections, the Mecklenburg County Board of Elections, and the Guilford County Board of Elections to comply with their voter list maintenance obligations and their record production obligations under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

---

[1] The undersigned notes that the Guilford Defendants are located within the Middle District of North Carolina.

(Document No. 1, p. 2).

Plaintiff contends that

> [w]hen the number of voter registrations in a jurisdiction is close to, at, or above the number of citizens over the age of 18 residing in that jurisdiction, it is an indication that that jurisdiction is not taking the steps required by law to remove ineligible registrations from the voter rolls.

> . . . Judicial Watch's analysis showed that, at the time of the EAC report, a significant proportion of North Carolina's 100 counties had registrations rates close to, at, or above 100% of their age-eligible citizenry.

(Document No. 1, pp. 8-9).

The Complaint notes that the National Voter Registration Act of 1993 ("NVRA") "requires states to 'conduct a general program that makes a reasonable effort to remove the names of ineligible votes from the official lists of eligible voters' by reason of death or change of address." (Document No. 1, p. 4) (quoting 52 U.S.C. § 20507(a)(4)).  The Complaint further describes the statutory background as follows:

> 15.    Under Section 8 of the NVRA, a voter becomes "ineligible," and subject to removal from a jurisdiction's voter rolls, when the voter asks to be removed from the rolls, does not respond to an address inquiry and fails to vote during a specified statutory period, dies, or is disqualified from voting under state law because of a criminal conviction or mental incapacity; or when an erroneous registration record is corrected.  52 U.S.C. § 20507(a)(3), (4)(A), 4(B), (c)(2)(B)(ii).

> 16.    The NVRA provides that a voter may be removed from a jurisdiction's voter rolls if the voter either (1) confirms in writing that he or she has moved outside the jurisdiction or (2) fails to respond to an address confirmation notice, then fails to vote during a statutory waiting period extending from the date of the notice through the next two general federal elections. 52 U.S.C. § 20507(d)(1).  Federal law makes this removal mandatory.  *Id.* § 20507(d)(3);  52 U.S.C.§ 21083(a)(4)(A).

> . . .

3

20. Section 8(i) of the NVRA grants the public the right to request information concerning voter list maintenance. It provides that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

(Document No. 1, pp. 4-5).

Plaintiff asserts two causes of action in this case, apparently against all Defendants. (Document No. 1, pp. 15-17). First, Plaintiff alleges that "Defendants have failed to fulfill their obligations under Section 8(a)(4) of the NVRA to conduct a general program that makes a reasonable effort to cancel the registrations of registrants who are ineligible to vote in North Carolina's federal elections." (Document No. 1, p. 15); see also 52 U.S.C. § 20507(a)(4). Second, Plaintiff alleges that "Defendants have failed to fulfill their obligations under Section 8(i) of the NVRA to make available to Plaintiff 'all records' within the past two years 'concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.'" (Document No. 1, p. 16); see also 52 U.S.C. § 20507(i).

"The League Of Women Voters Of North Carolina And The North Carolina A. Philip Randolph's Motion To Intervene As Defendants" (Document No. 19) was filed on April 21, 2020. The proposed Defendant-Intervenors summarize their position by stating that they "oppose any requested court-ordered purging of voting rolls in North Carolina, including Guilford County and Mecklenburg County, and will seek a judgment on the pleadings in favor of Defendants on Count I of the Complaint." (Document No. 19, p. 2).

Following several consent motions to extend time, Defendants responded to the Complaint by filing "The State And Guilford County Defendants' Motion To Dismiss" (Document No. 38)

4

and "The Mecklenburg County Board Of Elections, Michael G. Dickerson, And Carol Hill Willliams' Motion To Dismiss" (Document No. 39) on July 27, 2020. Defendants contend that dismissal is appropriate under Fed.R.Civ.P. 12(b)(1), (2), (5), and (6). (Document Nos. 38 and 39).

Also pending before the Court are: the "Proposed Defendant-Intervenors' Motion For Expedited Consideration Of Their Motion To Intervene" (Document No. 41); Plaintiff's "Motion To Extend Time To Serve Complaint" (Document No. 42); and Plaintiff's "Motion For Oral Argument Regarding Motions To Dismiss" (Document No. 55).

The pending motions are ripe for review and recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

A motion to dismiss based on Eleventh Amendment immunity concerns the Court's jurisdiction. Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014). Statutory standing under the

NVRA is also jurisdictional.  Bellitto v. Snipes, 221 F.Supp.3d 1354, 1361 (S.D. Fla. 2016) ("Plaintiffs' standing to bring suit depends on compliance with the statute").

Under Rule 12(b)(5), failure to properly serve process on a defendant deprives the Court of personal jurisdiction.  Scott v. N.C. Dep't of Revenue, No. 3:13-CV-294-MOC-DSC, 2014 WL 1267248, at *1 (W.D.N.C. Mar. 26, 2014).  For a motion regarding insufficient service of process, "affidavits and other materials outside the pleadings may be properly submitted and considered." Id. (citation omitted).

## III.  DISCUSSION

The undersigned finds that a "history of the NVRA and its relevant provisions," as recently described by the United States Court of Appeals for the Fourth Circuit, is a helpful starting point for the Court's analysis of the issues here.

> In enacting the NVRA, Congress explained that the right to vote is a "fundamental right" and that governments must "promote the exercise of that right."  National Voter Registration Act of 1993, Pub. L. No. 103-31,§ 2,107 Stat. 77 (codified at 52 U.S.C. §20501(a)(1)-(2)).  Prior to the NVRA's enactment, many states had been removing registered voters from the rolls "merely because they [had] failed to cast a ballot in a recent election." S. Rep. No. 103-6, at 17 (1993).  Congress found that these "purge systems" had been used to "violate the basic rights of citizens," particularly members of "minority communities." Id. at 18.  Accordingly, the stated **"purposes" of the NVRA** are (1) "to establish procedures" that **"increase the number of eligible citizens who register to vote in elections for Federal office;"** (2) to permit federal, state, and local governments to **"enhance[] the participation of eligible citizens as voters in elections for Federal office;"** (3) **"to protect the integrity of the electoral process;"** and (4) **"to ensure that accurate and current voter registration rolls are maintained."** 52 U.S.C. §20501(b).  Regarding purposes (3) and (4), any "program or activity" conducted by the state to achieve these particular goals must "be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." Id. §20507(b).
>
> Under the NVRA, states must permit voters to register by at least three methods:  (1) by applying to vote while filing an application

for a driver's license; (2) by submitting an application through the United States Postal Service; or (3) by submitting an application in person at a designated location, including offices providing public assistance and services to persons with disabilities. *Id.* §§20503(a)(1)-(3), 20506(a)(2). And, to remove a registrant from the official list of eligible voters, states must establish a "general program" of removal for those who have died or have changed their residence. *Id.* § 20507(a)(4). States also may remove a registrant from eligible voter lists when the registrant requests removal or when state law mandates removal. *Id.* § 20507(a)(3). **Indeed, North Carolina law requires the Board to "adopt a uniform program that makes a diligent effort not less than twice each year . . . [t]o remove the names of ineligible voters from the official lists of eligible voters**." N.C. Gen. Stat. §163-82.14(a).

The NVRA's disclosure provision requires that states "maintain for at least 2 years" and allow "public inspection" of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). The disclosure provision expressly exempts two categories of records, namely, records related to an individual's decision declining to register, and records identifying the agency where a voter registered. *Id.*; *see also id.* §20507(a)(6).

Pub. Interest Legal Found., Inc. v. N. Carolina State Bd. of Elections, 996 F.3d 257, 264-265, (4th Cir. May 10, 2021) (emphasis added).

Defendants note that 52 U.S.C. § 20507(c) is known as the NVRA's "safe harbor" provision because it establishes a process by which a state "may meet" the "reasonable effort" requirement set forth in the statute. (Document No. 38-1, p. 2) (citing Bellitto v. Snipes, 935 F.3d 1192, 1203 (11th Cir. 2019)).

That process entails sending an address-confirmation mailing to all voters for whom the U.S. Postal Service has a change-of-address notification on file. *Id.* § 20507(c)(1). Then, for voters who respond by confirming that they have moved out of the jurisdiction, a state may remove them from the rolls. *Id.* § 20507(d)(1)(A). For voters who do not respond to the mailing, a state may remove them from the rolls, but only if those voters fail to appear to vote in the jurisdiction in the two Federal general elections after the mailing. *Id.* § 20507(d)(1)(B).

(Document No. 38-1, pp. 2-3).

"North Carolina has adopted a detailed statute that implements the list-maintenance provisions of the NVRA." (Document No. 38-1, p. 3) (citing N.C.Gen.Stat. § 163-82.14). "The State Board and its executive director oversee the conduct of elections and the coordination of the State's duties under the NVRA." (Document No. 38-1, p. 3).

The crux of the Complaint is that Defendants have failed to comply with the requirements of the NVRA. See (Document No. 1, pp. 10-11).

**A. Dismissal**

"The State And Guilford County Defendants' Motion To Dismiss" (Document No. 38) and the Mecklenburg Defendants' "…Motion To Dismiss" (Document No. 39) seek to dismiss the Complaint on multiple grounds and rely on essentially the same arguments. In fact, the Mecklenburg Defendants "adopt and incorporate" most of the arguments in the State and Guilford County's "Memorandum In Support…" of their motion to dismiss. (Document No. 40, pp. 4-5) (citing Document No. 38-1, pp. 17-25).

**1. Service**

First, Defendants argue that the Court lacks personal jurisdiction over them because Plaintiff used an unauthorized method to attempt service of the Summons and Complaint. (Document No 38-1, pp. 10-11; Document No. 40, pp. 3-4). Defendants note that service may be provided by a "designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2)," but such delivery services do not include the one used by Plaintiff here – FedEx Express Saver. (Document No. 38-1, p. 10 and Document No. 40, p. 4) (citing N.C.Gen.Stat. 4(j) and 26 U.S.C. § 7502(f)(2)). Defendants further note that

8

> "North Carolina law requires that service of process statutes be strictly construed and followed, and a plaintiff who fails to comply with them, even where actual notice occurs, does not properly serve the defendant." *Benitez v. Maxim Healthcare Servs.*, No. 1:12CV1195, 2013 WL 3441734, at *3 (M.D.N.C. July 9, 2013) (internal citations and quotation marks omitted). "Absent valid service of process, a court does not acquire personal jurisdiction over the defendant and the action must be dismissed." *Id.* (internal citations and quotation marks omitted).

(Document No. 40, p. 3).

In response, Plaintiff argues that dismissal is not *required* based on inadequate service. (Document No. 51, p. 33) (citing Fed.R.Civ.P. 4(m)). Plaintiff then incorporates its arguments and declarations in support of its "Motion To Extend Time To Serve Complaint" (Document No. 42) filed on July 29, 2020, two (2) days after the motions to dismiss were filed. (Document No. 51, p. 34) (citing Document Nos. 42, 42-1, 48, and 48-1).

Plaintiff argues that no Defendant was prejudiced by receiving service via FedEx Express Saver. (Document No. 42, p. 3; Document No. 51, p. 34). Moreover, Plaintiff reports that each Defendant got a second copy of the initial service packet by Fed-Ex Priority – a "designated delivery service" – on or about July 28, 2020. (Document No. 42, p. 3). And, Plaintiff also sent a third copy of each initial service packet to each Defendant by U.S. Postage Certified Mail, Return Receipt Requested. Id. Plaintiff concludes that the Court has the discretion to allow Plaintiff additional time to provide service rather than dismiss the action on this basis. (Document No. 42, p. 5) (citing Fed.R.Civ.P. 4(m)).

In reply, Defendants note that Plaintiff does not dispute improper service. (Document No. 54, p. 1). Defendants go on to argue that:

> A dismissal for improper service is especially appropriate here, given the Plaintiff's insufficient notice of alleged NVRA violations on the Defendants before this lawsuit was filed, as discussed further below, *infra* pp. 4–10. **Such a dismissal, without prejudice**, would

afford Plaintiff an opportunity to *properly* explain to the Defendant boards exactly how the State's voter list maintenance procedures are unlawful and why Defendants' production of voter records are deficient. **The interests of justice would be served if the parties could have an informed discussion outside of litigation about the elections boards' procedures and what the NVRA requires. That is, after all, [] the purpose of the prelitigation notice requirement of the NVRA**. *See Ass'n of Cmty. Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997).

(Document No. 54, pp. 1-2) (emphasis added).

The undersigned will recommend that the motions to dismiss based on insufficient service of process be <u>denied</u>. It is surprising that an entity that seems to exist for the sole purpose of litigating matters such as this in courts across the country failed to execute proper service, but it is also commendable that Plaintiff moved swiftly to correct its oversight and to seek additional time to achieve proper service. Moreover, the undersigned is not persuaded that Defendants have been prejudiced since actual notice was achieved. <u>See</u> <u>Brown v. Charlotte Rentals LLC</u>, No. 3:15-CV-043-FDW-DCK, 2015 WL 4557368, at *4 (W.D.N.C. July 28, 2015) ("In light of the liberal construction given to Federal Rule of Civil Procedure 4 when actual notice is achieved, the Court finds that the alleged insufficiency does not warrant dismissal").

Defendants do, however, present an interesting argument that multiple deficiencies, including with service, require dismissal, but that "[s]uch dismissal, without prejudice, would afford Plaintiff an opportunity to *properly* explain to the Defendant boards exactly how the State's voter list maintenance procedures are unlawful…." (Document No. 54, pp. 1-2). Defendants' "dismissal, without prejudice" statement seems to suggest that following additional communication between the parties, Plaintiff should be allowed to amend its Complaint or file a new lawsuit. <u>Id.</u>

Based on the arguments on this issue, and the other issues to be addressed below, the undersigned finds Defendants' suggestion to be pragmatic, and possibly a most efficient way to get to the merits of the parties' dispute. An exchange of relevant documents and information, including more current data regarding voter registrations, may resolve the parties' dispute, and/or clarify any alleged violations of the NVRA. The undersigned is persuaded that the process suggested by Defendants would be in the best interests of the parties and the citizens of North Carolina. Id.

To date, however, Plaintiff has not sought leave to file an Amended Complaint. Especially if the parties were able to confer as Defendants suggest, and then consent to an amended pleading (if necessary), such a request would likely be favorably viewed by the Court.

### 2. Immunity

Next, the State and the State Board argue that they are immune from suit under the Eleventh Amendment. (Document No. 38-1, pp. 11-12).

> "In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 140 S.Ct. 994, 1000 (2020). A state's immunity under the Eleventh Amendment extends to its agencies, such as the State Board. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Walker v. N.C. State Bd. of Elections*, No. 1:17-CV-78, 2017 WL 4477295, at *1 (M.D.N.C. May 15, 2017).

(Document No. 38-1, p. 11).

Defendants note that the remedial provision of the NVRA does not authorize suits against the States. (Document No. 38-1, p. 12) (citing 52 U.S.C. § 20510(b)(2)). Defendants further note that another federal court in North Carolina addressed this issue recently and concluded that "the NVRA does not contain unequivocal language abrogating state immunity." Id. (citing Publ. Interest Legal Found., Inc. v. Bell, 2019 WL 5290920, at * 2 (E.D.N.C. Oct. 17, 2019) rev'd on

other grounds by <u>Pub. Interest Legal Found., Inc. v. N. Carolina State Bd. of Elections</u>, 2021 WL 1877195, at *4, n.3 (4th Cir. May 10, 2021) ("The Foundation also named the state Board as a defendant, but the district court dismissed it as immune from suit under the Eleventh Amendment. The Foundation does not challenge this ruling on appeal")). The District Court for the Eastern District of North Carolina specifically held that the State Board "is within the purview of Eleventh Amendment immunity," and the Fourth Circuit has given no indication that it disagrees. <u>Id.</u>

Defendants observe that a Virginia court reached the same conclusion. (Document No. 38-1, p. 12) (citing <u>Krieger v. Loudon County</u>, 2014 WL 4923904, at *3 (W.D.Va. Sept. 30, 2014) <u>aff'd by</u> 599 App'x 112 (4th Cir. 2015)) (the "National Voter Registration Act [does not] contain the requisite language abrogating the state's 11th Amendment sovereign immunity"). <u>See also</u> <u>North Carolina State Conference of NAACP v. Cooper et al</u>, 397 F.Supp.3d 786, 799 (M.D.N.C. July 2, 2019) ("in the absence of a determination by the Fourth Circuit or the Supreme Court that the VRA abrogates North Carolina's Eleventh Amendment immunity, this Court declines to so hold") and <u>Cooper v. N. Carolina State Bd. of Elections</u>, 2009 WL 9081691, at *9 (E.D.N.C. June 12, 2009 ("the court treats the Board as an arm of the state and thus within the purview of the Eleventh Amendment").

In response, Plaintiff acknowledges that Defendants cite "two cases where courts considered sovereign immunity in the NVRA context" but argues that the <u>Krieger</u> decision is not "binding precedent" and that the Eastern District of North Carolina "wrongly decided the Eleventh Amendment question" in <u>Pub. Interest Legal Found., Inc. v. Bell</u>. (Document No. 51, pp. 29-30). Plaintiff seems to suggest that this Court should ignore the decisions within the Fourth Circuit and instead follow cases it cites from other circuits. (Document No. 51, pp. 30-33). Plaintiff concludes, without citing any cases in the Fourth Circuit to support its conclusion, that "[c]learly,

Congress intended to abrogate North Carolina's sovereign immunity with respect to the administration of federal elections in implementing the NVRA." (Document No. 51, p. 33).

Defendants' "Reply In Support…" asserts that "Plaintiff offers no case that has held that the NVRA abrogated Eleventh Amendment immunity of the States." (Document No. 54, p. 2) (citing Document No. 51, pp. 27-33). Defendants argue that the "NVRA authorizes a private right of action, 52 U.S.C. § 20510(b)(2), but nowhere does it authorize a private suit against a sovereign State." (Document No. 54, p. 3). Instead, Defendants note that the statute "directs potential plaintiffs to provide presuit notice 'to the chief election official of the State involved.'" (Document No. 54, p. 4) (citing 52 U.S.C. § 20510(b)(1)). Defendants aver that:

> The best reading of this provision is that Congress enacted the NVRA in harmony with the Eleventh Amendment's prohibition on private parties suing a State, while recognizing the exception to immunity for suits against state officials for prospective injunctive relief—the so-called *Ex parte Young* exception.

(Document No. 54, p. 4) (citing Seminole Tribe v. Florida, 517 U.S. 44, 73 (1996)). Defendants note that the State's chief elections official, Defendant Karen Brinson Bell, has not asserted immunity. Id.

The undersigned finds Defendants' arguments more persuasive. In short, the undersigned will decline to recommend that this Court ignore the decisions cited above from within the Fourth Circuit in favor of Plaintiff's cited authority. Defendants make a compelling case that the State and the State Board are immune from suit, but that an action under the NVRA against the State's chief elections official is appropriate. See Cooper v. N. Carolina State Bd. of Elections, 2009 WL 9081691, at *10 ("the Eleventh Amendment would not bar plaintiff from seeking prospective relief against [the Executive Director of the North Carolina State Board of Elections] in his official capacity.")

The undersigned will recommend that the motions to dismiss be <u>granted</u> as to Defendants the State of North Carolina (the "State") and the North Carolina State Board of Elections ("State Board") based on immunity from suit under the Eleventh Amendment.

### 3. Notice of Violation

Defendants also argue that Plaintiff cannot establish statutory standing because it failed to adequately "'provide written notice of the violation to the chief election official of the State involved,' . . . and afford the election official an opportunity to correct the violation within 90 days." (Document No. 38-1, pp. 12-13) (citing 52 U.S.C. § 20510(b)(1) and (2)). "'[F]ailure to provide notice is fatal' to a plaintiff's standing." (Document No. 38-1, p. 13) (quoting <u>Bellitto v. Snipes</u>, 221 F.Supp.3d 1354, 1362, (S.D.Fla. Oct. 26, 2016) (quoting <u>Scott v. Schedler</u>, 771 F.3d 831, 836 (5th Cir. 2014))).

According to Defendants, Plaintiff's required notice regarding Count I was too vague to serve its statutory purpose. (Document No. 38-1, p. 13) (citing Document No. 1-1). Defendants argue that Plaintiff "did not identify what election administrators were doing that was <u>un</u>reasonable," even though the State Board had previously provided a "detailed list maintenance policy." <u>Id.</u> (citing Document No. 38-5, p. 2). Defendants assert that Plaintiff's failure to identify what efforts the boards were undertaking, or not undertaking, that were unreasonable under the NVRA deprived Defendants of "an opportunity to attempt compliance before facing litigation.'" <u>Id.</u> (quoting <u>Ass'n of Cmty. Organizations for Reform Now v. Miller</u>, 129 F.3d 833, 838 (6th Cir. 1997)).

Defendants contend that the figures provided by Plaintiff in its notice letter to the Defendant counties do not show a violation of the NVRA. (Document No. 38-1, p. 14). Moreover, they note that the report relied on by Plaintiff "warns against drawing conclusions about NVRA

compliance based on the registration rates the agency reports, precisely because of the lag time the NVRA requires for the removal of voters."  Id.  (citing U.S. Election Assistance Comm'n, Election Administration and Voting Survey, 2018 Comprehensive Report at 47, 49, 52, https://bit.ly/2Zlrx3L [hereinafter "EAVS 2018 Report"]).

> **[D]ata on registered and eligible voters as reported in the EAVS should be used with caution,** as these totals can include registrants who are no longer eligible to vote in that state but who have not been removed from the registration rolls because the removal process laid out by NVRA can take up to two election cycles to be completed.
> . . .
> **Some states appear to have registration rates that exceed 100 percent** of the state's CVAP **because of the long time period involved in removing ineligible voting records required by NVRA**.
> . . .
> it is inevitable that registration rolls will contain some number of voter records for individuals who are no longer eligible.

EAVS 2018 Report at pp. 47, 49, and 52 (emphasis added).

Defendants further explain that the NVRA "expressly sanctions a method of compliance with the 'reasonable effort' provision" and that the "safe-harbor process, which relies on moves reported to the U.S. Postal Service, is all a state must do to comply with the 'reasonable effort' requirement with respect to people who have moved."  (Document No. 38-1, p. 15) (citing 52 U.S.C. § 20507(c)(1));  see also (Document No. 38-1, pp. 3-4) (citing N.C.Gen.Stat. § 163-82.14).

Next, Defendants note that although Plaintiff seeks statewide relief, its letters and Complaint lack any notice or allegation of violations of the NVRA outside of Guilford County and Mecklenburg County.  (Document No. 138, p. 16).  "Plaintiff therefore lacks standing to seek relief with respect to list maintenance activities pertaining to voters in any location outside Mecklenburg and Guilford Counties."  Id. (citing Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S.Ct. 1645,

15

1650 (2017) ("[S]tanding is not dispensed in gross . . . . To the contrary, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought").

Finally, Defendants argue that the notice regarding Count II also fails because it preceded the alleged violation. (Document No. 38-1, p. 17) (citing Document No. 38-4). Defendants suggest that Plaintiff provided a demand letter for a production of documents but "never provided notice of a violation after Defendants' purported failure to provide requested records." Id. Defendants contend that Plaintiff must make a records request, and then, if it concludes Defendants have failed to comply, must "explain why Defendant's productions failed to satisfy those requests." Id. (quoting Bellitto, 268 F.Supp.3d at 1335-1336).

In response, Plaintiff argues that its notice to Defendants satisfied the NVRA's notice requirement. (Document No. 51, pp. 24-27). Relying on Judicial Watch, Inc. v. King, Plaintiff suggests that its notice was adequate because "when read as a whole, [it] makes clear that Judicial Watch is asserting a violation of the NVRA and plans to initiate litigation if its concerns are not addressed in a timely manner." (Document No. 51, p. 24) (citing Judicial Watch, Inc. v. King, 993 F.Supp.2d 919, 922 (S.D.Ind. 2012) and 52 U.S.C. § 20510(b).

Plaintiff also relies on Martinez-Rivera, which describes a similar notice letter to the ones provided here and a similar response by the defendant. (Document No. 51, p. 25) (citing Martinez-Rivera, 166 F.Supp.3d 779, 795 (W.D. Texas Mar. 30, 2015)). As in this case, the plaintiff in Martinez-Rivera asserted that election officials had failed to conduct reasonable efforts to maintain voter registration lists and that the voter rolls contained more names than there are citizens eligible to vote. Id. The Martinez-Rivera court rejected the argument that the notice letter was too vague and opined that "'having too many registered voters on county registration rolls is *evidence*' of a Section 8 violation." Id. Martinez-Rivera further held that

> The letter gives the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation. Accordingly, the Defendant's objection that notice was inadequate is overruled.

Id.

In its opposition brief, Plaintiff further argues that Defendants' expectation of a second notice/letter, after failing to provide records, "would be a pointless procedure." (Document No. 51, p. 26). Plaintiff believes it was sufficient that Defendants were informed that if they failed to produce the requested records, they would then be in violation of the NVRA. (Document No. 51, pp. 26-27).

In reply, Defendants re-assert that Plaintiff's presuit notices were fatally deficient. (Document No. 54, pp. 4-10). Defendants argue that Plaintiff failed to identify how they were allegedly violating the NVRA's "reasonable effort" provision, and as such, failed "to provide the boards 'an opportunity to attempt compliance before facing litigation." (Document No. 54, p. 5) (quoting Ass'n of Comm. Org. for Reform Now v. Miller, 129 F.3d 833, 838 (6th Cir. 1997). "Plaintiff doesn't identify any deficient procedures, despite having full knowledge of what the State's list maintenance procedures are." Id. (citing Document No. 38-5, p. 2).

Defendants then explain that "the statistics in Plaintiff's letters cannot help identify any "reasonable effort" deficiency [] because these statistics are consistent with compliance with the NVRA." Id. "Various provisions of the NVRA itself operate to ensure that significant numbers of likely ineligible voters remain on the rolls at any particular time, especially at the time of a general election, when the registration statistics at issue were reported." Id. (citing Bellitto v. Snipes, 935 F.3d 1192, 1208 (11th Cir. 2019)).

Defendants rely heavily on Scott v. Schedler to support their position that "a defendant must be able to discern what it is supposed to do to come into compliance." (Document No. 54,

17

p. 7) (citing <u>Scott v. Schedler</u>, 771 F.3d 831, 836 (5th Cir. 2014). In that case, the Fifth Circuit determined that the "notice letter was too vague to provide Schedler with 'an opportunity to attempt compliance' as to Scott 'before facing litigation.'" <u>Scott</u>, 771 F.3d at 836 (quoting <u>Miller</u>, 129 F.3d at 838). Defendants argue that the district court decisions relied upon by Plaintiff "cannot be squared with the appellate decisions requiring specific violations to be identified in a notice such that an elections board may attempt to correct any problems before facing a lawsuit." <u>Id.</u> Defendants conclude that the notices to Defendants here were insufficient to confer standing to assert Count I. (Document No. 54, p. 8).

Regarding Count II, Defendants argue that "with respect to the lack of notice regarding a failure to provide documents, Plaintiff makes no attempt to argue that a notice of violation occurred." (Document No. 54, p. 9). Defendants contend that Plaintiff improperly relies on the suggestion that failure to comply with a records request "would be deemed" a violation in the future. <u>Id.</u> (quoting Document No. 51, p. 26). Defendants cite to <u>Bellitto v. Snipes</u> for further support, arguing that "presuit notice of records-production failure is proper where 'the plaintiff's request and the defendant's response preceded the notice letter.'" <u>Id.</u> (quoting <u>Bellitto</u>, 268 F.Supp.3d at 1335).

Defendants' request to dismiss on the basis of insufficient notice presents a close call. However, the undersigned finds the logic and legal authority relied upon by Defendants to be more persuasive. In short, the undersigned agrees that the notices/letters sent by Plaintiff to Defendants Dickerson, Collicutt, and Bell were too vague to provide them an opportunity to attempt compliance before facing litigation. <u>See Scott</u>, 771 F.3d at 836 (quoting <u>Miller</u>, 129 F.3d at 838). <u>See also Bellitto v. Snipes</u>, 221 F.Supp.3d 1354 (S.D.Fla. 2016); <u>Bellitto v. Snipes</u>, 268 F.Supp.3d 1328 (S.D.Fla. 2017); and <u>Bellitto v. Snipes</u>, 935 F.3d 1192 (11th Cir. 2019). The <u>Miller</u> decision

instructively notes that "[t]he language and legislative history of 42 U.S.C. § 1973gg–9(b) indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing litigation. Miller, 129 F.3d at 838 (citing Senate Comm. on Rules and Admin., National Voter Registration Act of 1993, S.Rep. No. 6, 103d Cong., 1st Sess. 41 (1993)).[2]

The undersigned will respectfully recommend that this Court decline to adopt the position of the Texas court in Martinez-Rivera that a high voter registration rate is sufficient evidence of an NVRA violation to support a notice of violation that allows a defendant an opportunity to attempt compliance before litigation. See Martinez-Rivera, 1166 F.Supp.3d at 795.

As noted above, the *same* EAVS report cited by Plaintiff to allegedly show a violation, specifically advises that the data "be used with caution" and that some "states appear to have registration rates that exceed 100 percent . . . because of the long time period involved in removing ineligible voting records required by NVRA." EAVS 2018 Report at pp. 47, 49; see also (Document No. 1, p. 8; and Document Nos. 1-1 and 1-2). If states should expect to see high voter registration rates, such information, without more, does not seem to provide adequate notice/evidence of non-compliance with the NVRA. Contrary to Plaintiff's assertion that a "high registration rate suggests that a jurisdiction is not removing voters who have died or moved elsewhere, as required by 52 U.S.C. § 20507(a)(4)" – the EAVS report relied upon by Plaintiff tells us to *expect* a high registration rate that may exceed 100 percent. Id.

Notably, Plaintiff's letters/notices to Defendants state that Plaintiff hopes its concerns:

> can be resolved amicably. We have a track record of resolving NVRA claims on reasonable terms. However, if you do not contact us about correcting or otherwise resolving the above-identified problems within 90 days, a federal lawsuit . . . may be necessary."

---

[2] 42 U.S.C. § 1973gg–9(b) was transferred to 52 U.S.C. § 20510.

(Document No. 1-1, pp. 3-4, Document No. 1-2, pp. 3-4).

Defendant Bell did contact Plaintiff – approximately 98 days later – addressing Plaintiff's contentions, explaining Defendants' position, and expressing concern about the data relied upon by Plaintiff. (Document No. 1-3). Defendant Bell then invited Plaintiff to contact the State Board office if it "discover[ed] information indicating noncompliance with the above listed requirements" and asserting that "the analysis [Plaintiff] provided does not provide information that indicates a violation has occurred." Id. It appears that instead of engaging in any further communication clarifying alleged violations or the NVRA, or providing a notice of specific violation – that Defendants might attempt to resolve – 8 days later, Plaintiff filed the instant lawsuit.

Although the undersigned finds that the letters/notices provided insufficient notice of a violation, they certainly provided an opportunity for the parties to engage in discussions that might have resolved their dispute or narrowed the issues. Both sides' failure to communicate more effectively is regrettable.

The undersigned finds that Eleventh Amendment immunity and lack of statutory standing based on insufficient notice, provide adequate grounds to grant Defendants' motions to dismiss.

Since the undersigned finds dismissal here to be appropriate, the undersigned will deny as moot Plaintiff's "Motion To Extend Time To Serve Complaint."

**B. Intervention**

Although the League of Women Voters of North Carolina and the North Carolina A. Philip Randolph Institute have presented compelling arguments to be allowed to intervene, the undersigned finds that under the current posture of this case their motion should be denied. See

(Document Nos. 19 and 31). The undersigned recommends that these parties be permitted to renew their request if Plaintiff is allowed to file an Amended Complaint.

## C. Oral Argument

After too long a delay in this case already, the potential benefit of oral argument here is outweighed by the need for expediency in getting a recommendation to Judge Conrad. As such, the undersigned will respectfully recommend that Plaintiff's "Motion For Oral Argument Regarding Motions To Dismiss" (Document No. 55) be underlined denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "The League Of Women Voters Of North Carolina And The North Carolina A. Philip Randolph's Motion To Intervene As Defendants" (Document No. 19) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that "The State And Guilford County Defendants' Motion To Dismiss" (Document No. 38) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "The Mecklenburg County Board Of Elections, Michael G. Dickerson, And Carol Hill Williams' Motion To Dismiss" (Document No. 39) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Proposed Defendant-Intervenors' Motion For Expedited Consideration Of Their Motion To Intervene" (Document No. 41) be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Motion To Extend Time To Serve Complaint" (Document No. 42) be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Motion For Oral Argument Regarding Motions To Dismiss" (Document No. 55) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: August 20, 2021

David C. Keesler
United States Magistrate Judge